790 A.2d 243 (2002)
347 N.J. Super. 443
FIRST ENGLAND FUNDING, L.L.C., Stephanie Biagiotti, f/k/a Stephanie Stinson, Terry Brewer, Steven Clark, Robert Clifft, Sr., Louis F. Conni, Gordon D. Cunningham, Roy E. Decristofaro, Lela Dunston, Robert G. Gauntt, Kim Greenwood, Billy Joe Hendrix, Denise Hickman, Roderick A. Jackson, John R. Jeffs, Wayne G. Kirkpatrick, Brent Krause, Vickie R. Martin, Billy J. Miller, Omar Morales, Coral Nappo, Bernadette Rhodes, Jason E. Simmons, William D. Stone, Marcella Tatar, Charles W. Tuthill, Jr. and Nancy Wilson, Plaintiffs-Appellants, and
Katherine A. Arvantis and Joseph Potter, Plaintiffs,
v.
AETNA LIFE INSURANCE & ANNUITY CO., Aetna Services, Inc., American Mayflower Life Insurance Co. of NY, Cigna Reinsurance Co., Connecticut General Life Insurance Co., GE Capital Assurance Co., Hartford Casualty Insurance Co., Hartford Life Insurance Co., Hartford Life Insurance Co. of the Midwest, Hartford Underwriter's Insurance Co. of North America, ITT Cebsco/Hartford, Life Insurance Co. of North America, Manufacturers Life Insurance Co. of the USA, Merrill Lynch Settlement Services, National Indemnity Co., Pacific Life Insurance Co., Safeco Life Insurance Co., Twin City Fire Insurance Co., Travelers Casualty and Surety Co., Travelers Indemnity Co., Travelers Insurance Co., and Travelers Life and Annuity Co.,[1] Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2001.
Decided February 8, 2002.
*244 Thomas A. DeClemente, Secaucus, argued the cause for appellants (DeClemente & Associates, attorneys; Mr. DeClemente, on the brief).
Thomas G. Rohback, of the Connecticut bar, Hartford, admitted pro hac vice, argued the cause for respondents Aetna Life Insurance & Annuity Co., Aetna Services, Inc. and Safeco Life Insurance Co. (Le-Boeuf, Lamb, Greene & MacRae, attorneys; Mr. Rohback, of counsel and, with Elizabeth J. Gorman and Gregory W. Kulak, on the brief).
Stephen C. Baker, of the Pennsylvania bar, Philadelphia, admitted pro hac vice, argued the cause for respondents Manufacturers Life Insurance Company, Connecticut General Life Insurance Company, Insurance Company of North America, Life Insurance Company of North America, ACE American Reinsurance Company, National Indemnity Company and Pacific Life Insurance Company (Drinker, Biddle & Shanley, attorneys; Mr. Baker, of counsel and, with Francis X. Manning and Michael J. Miller, on the brief).
Before Judges PETRELLA, KESTIN and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
This matter, as addressed in the trial court, arose on four complaints, each in multiple counts, seeking declaratory and injunctive relief respecting the assignment of benefits to structured settlements of tort claims. Plaintiff First England Funding, L.L.C. (First England) is the ultimate assignee of each individual plaintiff's structured settlement rights. According to the trial court judge, there were eighty-five individual plaintiffs in the four actions as originally filed,[2] each alleging specific needs for access to the funds procurable on assignment of his or her structured settlement in exchange for discounted lump sum payments. The original settlement agreements contained clauses prohibiting the assignment of the recipients' payment rights under the structures provided.
First England is a New Jersey corporation. Also according to the trial court, seventy-three defendants were named in the four complaints, some entities impleaded in more than one complaint. Each defendant was alleged to be "either the insurer for the underlying tort defendant, or the annuity company ... selected ... to pay the annuity over a period of time." The various counts of the complaint implicated, inter alia, construal of the law of a sister state or states respecting the assignability of structured settlement rights.
The trial court adjudicated the claims in a consolidated disposition on the return of orders to show cause. Most of the claims were dismissed because diverse causes of action had been improperly joined in a single complaint, see R. 4:29-1(a), and on forum non conveniens grounds. The dismissals, all without prejudice to the plaintiffs' rights to sue elsewhere, bore upon the claims of most of the plaintiffs, those who were residents of other states and whose settlements disposed of tort litigation pending in other states arising from events outside of New Jersey. First England's claims based on the rights of those out-of-state plaintiffs were dismissed on like grounds. The trial court reached the merits in respect of the claims of three *245 individual plaintiffs in two of the four suits, all New Jersey residents, and held that the anti-assignment provisions of their settlement agreements were unenforceable.
First England appeals from the dismissals in only one of the cases. One of the defendants, Safeco Life Insurance Company, filed a cross-appeal which was later withdrawn.
In addressing the issues raised, Judge Guida stated in a written opinion:
Although some issues may be common to the various plaintiffs, who reside in different states, and also to the defendants who reside in different states, each claim is based on a different set of facts, involves different issues, different state statutes and choice of law questions, and the states in which the individual plaintiffs brought the underlying tort lawsuits which resulted in the structured settlements are different. * * *
The threshold questions which this court must answer are whether the court should permit the plaintiffs in each filed complaint to proceed under one docket number, and whether on forum non-conveniens grounds, any of the claims except those involving the three named New Jersey residents should proceed in this state.
He then dismissed the causes of action relating to the out-of-state plaintiffs on the basis that separate complaints should have been filed reflecting the claims of each of the respective assignors as well as those of First England derived therefrom or based thereon. See R. 4:29. The trial court's opinion continued:
While the court believes that the complaints should be dismissed for the reasons set forth above, it is constrained to also decide the issue of forum non conveniens.

Whenever the "ends of justice" suggest that a plaintiff's forum is inappropriate, a court may decline jurisdiction under the doctrine of forum non conveniens. See Mowrey v. Duriron Co. Inc., 260 N.J.Super. 402, 409, 616 A.2d 1300 (App.Div.1992). In determining whether the chosen forum is inappropriate, the court must consider both private and public factors. These factors were summarized in Mandell v. Bell Atl. Nynex Mobile, 315 N.J.Super. 273, 717 A.2d 1002 (Law Div.1997), as follows:
[T]he private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest from having localized controversies decided at home; (3) the interest of having a trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or the application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. Id. at 279-80, [717 A.2d 1002].
In D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491, 559 A.2d 420 (1989), the Supreme Court noted that:
[T]he focus of these public-interest factors is on the existence of a factual nexus between the issues in the litigation and the forum selected by the plaintiff. Ordinarily, the type of factual nexus that would induce a court to retain jurisdiction would be manifested *246 by a significant relationship between the issues in the case and the jurisdiction whose court was designated as the place for trial. Id. at 495[, 559 A.2d 420].
While this court recognizes that generally a plaintiff's choice of forum is entitled to great deference, "the presumption in favor of plaintiffs' choice [of forum] is only a strong one where plaintiff is a resident who has chosen his home forum.... [A] non-resident's choice of forum is entitled to substantially less deference." Mandell, 315 N.J.Super. at 281-82, 717 A.2d 1002. The Mandell court further stated:
The purpose of the public interest factors is to look beyond the interests of the specific parties to any dispute and to determine on a broader societal level whether the action should be maintained here. In this regard, it is simply not enough that the plaintiff chooses this forum, it is essential that, looking at the public interest considerations, there be a connection with the forum, a reason why it should in fairness to the citizens of this state be permitted to remain here. In this regard, the public interest factors require the court to analyze the relative congestion of the court dockets here in New Jersey, as opposed to the place where the dispute arose, the fairness of imposing the significant burdens of jury duty on our citizens where the dispute bears no relationship to this community, the local interest in the dispute which may motivate members of the community to desire information or access to the trial of an action which affects them, and the general local interest to be served by having a local controversy decided "at home". See id. at 283 [, 717 A.2d 1002], citing D'Agostino, 115 N.J. at 495[, 559 A.2d 420].
In holding that the matter was to be dismissed on forum non conveniens grounds, the Mandell court noted that:
[T]he only relationship of this dispute to this jurisdiction is that the parent corporation of the subsidiaries which entered into the contracts with its non-New Jersey subscribers is located here. * * * There is no public reason advanced by plaintiff which supports permitting this enormous and complex matter to proceed here. Our court dockets are crowded with matters of interest to and directly concerning the citizens of our own state. Id. at 283-84[, 717 A.2d 1002].
The court has evaluated both the private and public interest factors in this matter and concludes that it would be inappropriate to allow First England and the out-of-state individual plaintiffs to proceed in New Jersey. In each of these cases there is a structured settlement entered into between an individual beneficiary residing in a state other than New Jersey and an insurance company and annuity company having corporate headquarters in states other than New Jersey. In each case, the individual beneficiaries later assigned their right to receive the structured settlement payments to Settlement Funding, a Georgia Corporation. Up to the point of these assignments, with the exception of the plaintiffs who reside in New Jersey, this state had no contact with, or interest in, any of the issues or parties involved, and it is these initial assignments that are the subject of review. The fact that each of the assignments were then assigned by Settlement Funding to First England is of no moment in our analysis since First England merely stands in the shoes of its assignor, Settlement Funding. Likewise the fact that the assignments from Settlement Funding *247 to First England contain language that New Jersey law applies has no effect on the analysis of the first assignment.
Since New Jersey has minimal, if any, interest in these cases, it would be manifestly unfair to force the citizens of our state to bear the heavy burden of hosting disputes among numerous residents of other jurisdictions who were involved in out-of-state accidents and entered into contracts that have no ties to New Jersey. While a plaintiff's choice of forum is rarely disturbed, this is the unusual instance where dismissal is appropriate, as the private and public interest factors weigh in favor of dismissal and the plaintiffs are free to pursue their claims in other jurisdictions. Accordingly, the non-New Jersey plaintiffs may not re-file their complaints in New Jersey.
Plaintiffs argue that under Westinghouse v. Liberty Mutual Ins., 233 N.J.Super. 468 [, 559 A.2d 435] (App. Div.1989), they should be allowed to proceed in New Jersey and their cases should not be dismissed on the grounds of forum non conveniens. However, the Westinghouse case is distinguishable from the case at bar. In Westinghouse, although the plaintiff was not a New Jersey corporation, the court treated it as such due to the substantial business activity which it conducts in this state and the number of residents it employs. Accordingly, its decision to bring litigation in New Jersey was entitled to great deference. In addition, Westinghouse involved a complex insurance coverage dispute where one plaintiff sought to have its rights adjudicated in regards to the one-hundred-forty-four insurance companies which insured it for the risks of its business operations, wherever conducted, including environmental damage which occurred over a number of years and which was covered by numerous different policies. In the cases at bar, there are numerous plaintiffs (and First England), each having a separate settlement agreement with a different insurance company and annuity company. All of these agreements arise from wholly different transactions which have no relation to each other, and, except for these plaintiffs, absolutely no relation to the State of New Jersey.
Additionally, no comparison can be made between Westinghouse and First England. First England is a small business entity which appears to have been created for the express purpose of accepting assignments from a foreign corporation so that New Jersey has jurisdiction to rule on the assignability of the settlement agreements in the face of non-assignability provisions. On this point, the court can only ask itself why there should be language stating that New Jersey law should apply where New Jersey has almost no interest with the parties originally involved in the settlement agreements or the original assignments prior to the assignment to First England.
For all of the foregoing reasons, the complaint is dismissed without prejudice and with the exception of the plaintiffs who reside in New Jersey, all of the other individually-named plaintiffs will not be permitted to file new complaints in this state.
On appeal, First England argues that the trial court erred both in its determination that a joinder of claims was inappropriate and in ordering dismissal rather than severance as a consequence. See R. 4:30.[3] Addressing the dismissal on forum *248 non conveniens grounds, First England argues that the trial court erred in that regard also and that "[t]he subject jurisdiction of the Superior Court in a declaratory judgment action relating to enforcement of a contract in which a New Jersey resident is a party is derived from constitutional and statutory provision; the existence of such jurisdiction ... is unaffected by the fact that the underlying contract itself may be governed by foreign law." First England's brief concludes with an argument offering R. 4:67, the rule governing summary actions, as a framework for deciding the issues involving the applicability of other states' statutes on questions implicating the validity and enforceability of the anti-assignment provisions of the settlement agreements at issue.
We have reviewed the record in the light of the written and oral arguments advanced by the parties and, applying pertinent rules of law, we agree substantially with Judge Guida's forum non conveniens rationale. We discern no error in the trial court's conclusion that any presumption as may exist favoring First England's choice, as a domestic corporation, to litigate in New Jersey has been overcome by countervailing factors.
Having determined the dismissals were warranted on the forum non conveniens ground, we need not address the improper joinder issue. First England's argument based on R. 4:67 is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). And, we reject as meritless and excessively formalistic the argument advanced by some of the defendants that the appeals of certain plaintiffs should be dismissed as untimely. Ibid.
The dispositions in favor of the plaintiffs who were New Jersey residents are not before us. We note for the sake of completeness, however, that the trial court's decision in this matter was dated May 11, 2000, the same day as ours in Owen v. CNA Insurance/Continental Casualty Co., 330 N.J.Super. 608, 750 A.2d 211 (App.Div.2000), which reached a contrary result on the question whether a plaintiff in a similar position to those New Jersey residents before us herein could assign her rights to the proceeds of a structured settlement. The Supreme Court's determination on review, overruling our holding, see Owen v. CNA Insurance/Continental Casualty Co., 167 N.J. 450, 771 A.2d 1208 (2001), handed down over a year later and more in line with the result the trial court reached herein in respect of those claims it adjudicated on the merits, embodies the currently prevailing rule.
Affirmed.
NOTES
[1] We adopt the order in which defendants are listed in the amended notice of appeal, which is that used in the complaint. In contradistinction to federal practice, it is customary in New Jersey to maintain the original caption of a case throughout its pendency. See R. 2:5-1(f) and Appendix IV (noting that the title of a matter on appeal is to be "as captioned below"). Cf. R. 2:6-2(a)(3) (mandating that references to the parties on appeal shall be as plaintiff and defendant not as appellant and respondent); R. 1:4-1(a)(1) (second sentence). We are unable to determine how the order in the listing of defendants came to change during the course of proceedings in the trial court through the preparation and filing of the initial notice of appeal; the change was manifestly incorrect.
[2] Since the complaints were filed, some of the individual plaintiffs' claims have been voluntarily dismissed.
[3] We note that the trial court did sever and decide those claims over which it perceived an exercise of jurisdiction was appropriate.