IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Energy Claims Limited, a British Virgin Islands company, | ) ) ) | AMENDED OPINION[1] |
| | ) | Case No. 20100128-CA |
| Plaintiff and Appellant, | ) ) | |
| v. | ) ) | F I L E D (February 2, 2012) |
| Catalyst Investment Group Limited; Timothy Roberts; ARM Asset-Backed Securities, S.A.; Christopher P. Baker; Thomas DePetrillo; Charles Becker; and Robert Beuret, | ) ) ) ) ) ) ) ) | 2012 UT App 32 |
| Defendants and Appellees. | ) | |

-----

Third District, Salt Lake Department, 090900505
The Honorable Tyrone E. Medley

Attorneys:      Jefferson W. Gross and Robert J. Shelby, Salt Lake City, for Appellant
Reid W. Lambert, Anthony M. Grover, James L. Barnett, and Mona L. Burton, Salt Lake City; and Charles D. Schmerler, James H. Neale, and Jami Mills Vibbert, New York City, New York, for Appellees

-----

Before Judges McHugh, Voros, and Roth.

McHUGH, Associate Presiding Judge:

¶1     Energy Claims Limited (ECL) appeals the trial court's dismissal of its claims against Catalyst Investment Group Limited (Catalyst), Timothy Roberts, Christopher P.

---

1. This Amended Opinion replaces the Opinion in Case No. 20100128-CA issued on October 14, 2011.

Baker, Thomas DePetrillo, Charles Becker, and Robert Beuret for forum non conveniens, and the dismissal of its claims against ARM Asset-Backed Securities, S.A. (ARM), for improper venue. We affirm.


BACKGROUND[2]

¶2    Eneco, Inc., was incorporated in Utah in 1991 for the purpose of developing technologies related to cold fusion. Eneco subsequently redirected its research and development activities to focus on thermal chip technologies. Between 1999 and 2006, Eneco raised and spent significant funds by selling equity in Eneco and borrowing funds from lenders. One group of lenders, the 2005 Noteholders, advanced several million dollars to Eneco, securing the loans with Eneco's rights to its patents. In 2006, Eneco's board of directors (board)—consisting of Harold L. Brown, Max Lewinsohn, Patrick Murrin, and Charles Becker—projected that a minimum of $5 million in additional funds was needed to develop a commercially-viable product.

¶3    On May 15, 2006, Eneco entered into a contract with Catalyst (Catalyst Agreement), a United Kingdom investment group with its principal place of business in London, England. Pursuant to the Catalyst Agreement, Catalyst agreed to provide general corporate financial advice and to assist Eneco in the issuance of a $40 million convertible corporate bond. The Catalyst Agreement contained a forum selection clause that stated, "This Agreement shall be governed by, and construed in accordance with the Laws of England, and the parties hereto submit to the exclusive jurisdiction of the Courts of England and Wales." Timothy Roberts, the executive director of Catalyst, represented that Catalyst would raise $5 million for Eneco by September 30, 2006. Roberts is a resident of England and a director and agent of ARM, a société anonyme[3] incorporated under the laws of the Grand Duchy of Luxembourg. ARM's principal

---

2. In reviewing a motion to dismiss, "we view the facts and construe the complaint in the light most favorable to the plaintiff and indulge all reasonable inferences in his favor." *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 810 (Utah 1993) (internal quotation marks omitted).

3. A société anonyme is an incorporated joint-stock company. *See Black's Law Dictionary* 1518 (9th ed. 2009).

place of business is in Luxembourg, and its operations are focused on transactions involving asset-backed securities. Acting as ARM's agent, Catalyst advised Eneco to involve ARM in its fundraising efforts. Specifically, Catalyst proposed that Eneco "sell an investment bond, the 'C3 Bond,' issued by Eneco Financing, S.A., which in turn would be made up of bonds issued by Eneco and bonds issued by ARM." Catalyst also encouraged Eneco to form two subsidiaries, Eneco Europe, PLC (Eneco Europe), and Eneco Assets, Ltd. (Eneco Assets). Catalyst's strategy called for Eneco to license its intellectual property rights in the United Kingdom to Eneco Assets, then sell shares of Eneco Assets to Eneco Europe, so that Catalyst could offer shares of Eneco Europe to third-party investors to fund Eneco Europe's purchase of shares of Eneco Assets. Catalyst represented that this mechanism would raise at least $5 million for Eneco.

¶4    To facilitate the sale of Eneco Europe's shares and the issuance of the $40 million convertible bond, Catalyst asked Eneco to convert the 2005 Noteholders' debt to equity. Catalyst, ARM, and Roberts were aware that the 2005 Noteholders were unlikely to agree to such a conversion in the absence of assurances that Catalyst was successful in its fundraising efforts on behalf of Eneco. Based on written assurances from Roberts, Eneco informed the 2005 Noteholders that Catalyst had raised $5 million as promised. In reliance on this information, "the 2005 Noteholders agreed to convert their loans to equity upon the express condition that Catalyst had raised $5 million for Eneco," and "Eneco treated the debt owed to [the] 2005 Noteholders as having been converted to equity."

¶5    By early 2007, Eneco's board was concerned that none of the money allegedly raised by Catalyst had been received. Therefore, the board "hired counsel in the United Kingdom in order to investigate and pursue possible claims against Catalyst and possibly others for breach of contract and fraud." Catalyst was made aware of Eneco's concerns through a letter from Eneco's U.K. lawyer demanding that it perform its obligations under the Catalyst Agreement.[4]

¶6    In June 2007, Roberts approached Becker, a member of Eneco's board, to enlist his help in reconstituting Eneco's board for the benefit of Catalyst and ARM. Becker is a

---

4. Although ECL's opening brief indicates that Becker, Baker, DePetrillo, and Beuret caused Eneco to instruct the company's U.K. counsel not to send the demand letter to Catalyst, we recite the facts as set forth in the complaint.

resident of Texas. In exchange for Becker's efforts to appoint three new directors acceptable to Catalyst, Catalyst agreed to pay Becker, or a company controlled by Becker, $300,000 to develop a demonstration unit of Eneco's technology. Without disclosing the agreement with Catalyst to the rest of Eneco's board, Becker recruited three new directors, Baker, Beuret, and DePetrillo, who were investment bankers "familiar to Catalyst." Baker and Beuret are residents of Massachusetts, and DePetrillo is a resident of Rhode Island. Becker, Baker, DePetrillo, and Beuret (collectively, Defendant Directors) secretly acquired proxies from Eneco's shareholders and voted those shares so that Baker, DePetrillo, and Beuret were appointed to the Eneco board. Once ensconced on the Eneco board, the Defendant Directors conspired with Catalyst, ARM, and Roberts "to pursue their own self interests at the expense of Eneco." Specifically, ECL alleges that the conspirators publically listed Eneco's stock, enriched themselves with fees, and refused to hold a special shareholder's meeting authorized by resolution of the board.

¶7    By October 2007, Eneco was in default to the 2005 Noteholders and had no means to satisfy the deficiencies; the board acknowledged that the debt had been improperly converted to equity. Eneco's chief executive officer, Lewinsohn, acting through Maximillian & Co., an English sole proprietorship, notified Eneco that Maximillian & Co. had been appointed as collateral agent for the 2005 Noteholders. Despite numerous proposals from Maximillian & Co. to resolve the matter favorably to Eneco and to reconstitute the Eneco board in a manner acceptable to the 2005 Noteholders, the Defendant Directors refused to accept any offer from Maximillian & Co. and also rejected the written financing proposals from two other suitors presented to Eneco's board by Lewinsohn in November 2007. In response, Lewinsohn resigned as a director of Eneco and Murrin resigned shortly thereafter. In December 2007, Lewinsohn, acting through Maximillian & Co., initiated procedures to foreclose on Eneco's right to its patents on behalf of the 2005 Noteholders.

¶8    In December 2007, the Eneco Europe board, which included Roberts's wife, Barbara Piper, "put Eneco Europe into administration under the laws of the United Kingdom due to it insolvency." Because the administration of Eneco Europe was detrimental to Catalyst's business reputation, Catalyst sought a method to make Eneco Europe solvent. Roberts and Catalyst accomplished this purpose by inducing the Defendant Directors to forgive Eneco Europe's $3.5 million debt to Eneco for no consideration.

¶9     In early 2008, the Defendant Directors entered into an agreement with Catalyst, ARM, and Roberts (the Subscription Agreement), in which ARM agreed to finance Eneco's anticipated bankruptcy proceedings for $225,000 by purchasing shares of Eneco in that amount "provided that [ARM] obtain a release of any prior commitment to provide funds to Eneco."  The Subscription Agreement contained provisions selecting the laws of England and Wales and designating the courts of England and Wales as the choice of forum.  ECL alleges that, in furtherance of the conspiracy, the Defendant Directors entered into the Subscription Agreement, thereby releasing Roberts, Catalyst, and ARM from liability for breach of the Catalyst Agreement, and that they did so without adequate consideration.

¶10    On January 18, 2008, Eneco filed for reorganization under Chapter 11 of the United States Bankruptcy Code.  *See generally* 11 U.S.C. §§ 1101-74 (2006).  Thereafter, in June 2008, the bankruptcy trustee converted the case to a liquidation proceeding pursuant to Chapter 7 of the Bankruptcy Code.  *See generally id.* §§ 701-84.  All of Eneco's assets were sold by the bankruptcy trustee to pay Eneco's creditors. Maximillian & Co., the 2005 Noteholders' collateral agent, purchased Eneco's causes of action against all of the defendants from the bankruptcy estate for $750,000. Maximillian & Co. then assigned those causes of action to ECL.  ECL is a British Virgin Islands company with its principal place of business in Tortola, British Virgin Islands.

¶11    On January 9, 2009, ECL filed a complaint in the Third Judicial District Court of Utah against Catalyst, ARM, and the Defendant Directors, asserting three causes of action and praying for over $150 million in relief.  First, ECL alleges that the Defendant Directors breached their fiduciary duties to Eneco in their dealings with Catalyst, ARM, and Roberts.  Second, ECL contends that the Defendant Directors, Catalyst, Roberts, and ARM entered into a civil conspiracy in furtherance of which the Defendant Directors "(1) refused to pursue claims against Catalyst, ARM, and Roberts, (2) released claims against Catalyst, ARM and Roberts, and (3) released claims against Eneco Europe."  Third, ECL alleges that "Catalyst, ARM, and Roberts knowingly induced, aided and abetted the numerous breaches of fiduciary duty by [the Defendant Directors]."  In addition, ECL alleges that the Subscription Agreement revoked the Catalyst Agreement.  None of the parties to the complaint is a Utah resident.

¶12    On March 13, 2009, the Defendant Directors filed an answer denying the allegations in the complaint accusing them of breach of fiduciary duty and conspiracy.

Approximately one month later, Catalyst filed a motion to dismiss for improper venue and forum non conveniens. Roberts filed a separate motion to dismiss, joining in the arguments advanced by Catalyst, and adding the defense of failure to state a claim. In support of the motion, Catalyst and Roberts explained that the claims were all based on "Catalyst's purported failure to perform its obligations under [the Catalyst Agreement]" and that the efforts of Catalyst under that agreement "were to occur and did occur principally in the United Kingdom and Europe, through a bond offering to be listed on the Channel Island Stock Exchange and through services to be governed by the rules of England's Financial Services Authority (the equivalent of the United States' Securities [and] Exchange Commission)." Catalyst and Roberts pointed to the Catalyst Agreement's designation of England and Wales as the choice of law and forum, claiming that ECL could not avoid that forum selection clause by repackaging its breach of contract claims against Catalyst and Roberts as tort claims consisting of conspiring with and aiding and abetting the Defendant Directors. Catalyst and Roberts also argued that the complaint should be dismissed under the doctrine of forum non conveniens, noting that the primary parties are located outside of Utah, with many of them located in Europe, and that "access to the documents and testimony is made more difficult, *not* easier by litigating in Utah."

¶13     In response, ECL filed a memorandum in opposition to Catalyst's and Roberts's motions to dismiss, asserting that the claims were not within the scope of the Catalyst Agreement's forum selection clause and were instead focused on the breach of fiduciary duty by the Defendant Directors, who joined in a conspiracy with and were aided by Catalyst, Roberts, and ARM. Because Roberts was not a party to the Catalyst Agreement, ECL argued that he could not rely on it to prevent litigation in Utah, even if it were applicable. In addition, ECL argued that Catalyst and Roberts had failed to meet their heavy burden under the doctrine of forum non conveniens of coming forward with evidence of the hardship they would suffer if the case were tried in Utah. ECL further asserted that there was no other convenient forum because Utah is the only forum with personal jurisdiction over all of the parties.

¶14     On May 15, 2009, ARM filed a separate motion to dismiss on the grounds of improper venue and lack of personal jurisdiction. ARM argued that the claims against it were within the scope of the forum selection clause in the Subscription Agreement and, therefore, venue in Utah was improper. With respect to personal jurisdiction, ARM contended that it did not have minimum contacts with the State of Utah. In

support, ARM filed a declaration from Roberts, in his capacity as a director of ARM, indicating that ARM "provides services primarily to clients in England and Europe," and further stating that it has no contacts with Utah other than its participation in the Subscription Agreement.

¶15 On May 26, 2009, Catalyst and Roberts filed a reply, again arguing that the claims were within the scope of the Catalyst Agreement's forum selection clause, that Roberts was entitled to the protection of that clause, and that the complaint should be dismissed for forum non conveniens. With the reply memorandum, Catalyst and Roberts filed a declaration from Moray Macpherson, the "Head of Legal Management and Risk of Defendant Catalyst." The declaration indicated that Catalyst provides services to clients primarily in England and Europe, had done no business with a Utah entity other than Eneco, and had no other connections to Utah, past or present. According to Macpherson, all of Catalyst's services to Eneco were provided pursuant to the Catalyst Agreement and the Subscription Agreement, which were negotiated and executed in England. Macpherson also stated that Catalyst was compelled to participate in Eneco's Utah bankruptcy proceedings "at great expense and hardship to its business," due to the time and money required to defend its interests, including "thousands of dollars in traveling expenses," and the costs of hiring additional staff, who were "regularly . . . forced to work at odd hours to coordinate with local counsel" due to the seven-hour time difference. In closing, Macpherson stated, "If forced to defend claims brought in this action, Catalyst will suffer these same grave hardships," in that it "would again be forced to expend significant sums to employ local counsel, fly to and from Utah, and maintain staff in London to coordinate with Utah," resulting in "disruption of Catalyst's business [that] will place enormous strain upon our operational capacity," and the expenditure of "significant expense and time" due to the fact that "most parties and witnesses are located far from Utah."

¶16 On June 12, 2009, ECL filed its opposition memorandum to ARM's motion to dismiss the complaint for lack of personal jurisdiction and improper venue, arguing that ARM had significant contacts with Utah, that Utah is the proper forum for the resolution of the dispute, and that the tort claims asserted were based on facts that occurred before the Subscription Agreement was executed and, therefore, do not fall within its forum selection clause. In the alternative, ECL argued that even if the forum selection clause did apply, the Utah court should not enforce it because to do so would deprive ECL of its day in court. ARM filed a reply memorandum contending that the

Utah court did not have personal jurisdiction over it and that the claims were related to the Subscription Agreement and, thus, were required to be brought in England, which was also the most convenient forum.

¶17 After briefing was completed, the Defendant Directors joined in the motions to dismiss for forum non conveniens and expressly consented to the jurisdiction of the English courts, explaining that "the whole matter should be litigated in a single action in that forum," and opining that "[t]his will not result in prejudice to [ECL], which is a British Virgin Islands company, particularly where its predecessor [Maximillian & Co.] is already a party to an action in England involving substantially similar issues." ECL objected to the Defendant Directors' joinder, claiming that ECL was not a party to the English proceedings and that the Defendant Directors could not meet their heavy burden of establishing forum non conveniens.

¶18 On August 11, 2009, the trial court scheduled a hearing on the combined motions to dismiss for October 14, 2009, reserving two-and-one-half hours for argument. On October 9, 2009, Catalyst, Roberts, and ARM filed a Request for Judicial Notice, asking the trial court to take judicial notice of related legal proceedings filed

> (i) with the Third Judicial District Court in and for Salt Lake County, State of Utah, No. 080923582, styled *Maximillian & Co. v. Catalyst Investment Group Limited et al.* (the "Utah Noteholder Action"); (ii) with the Third Judicial District Court in and for Summit County, State of Utah, No. 080500707, styled *Harry Reed, et al. v. Catalyst Investment Group Limited et al.* (the "Park City Action"); (iii) with the English High Court of Justice, Chancery Division, No. HC08C03158, styled *Catalyst Investment Group Ltd. et al. v. Max Lewinsohn et al.* (the "UK Noteholder Action"); (iv) with the English High Court of Justice, Chancery Division, No. HC08C03241, styled *Catalyst Investment Group Ltd. et al. v. Max Lewinsohn et al.* (the "UK Declaratory Action"); and (v) with the English High Court of Justice, Chancery Division, No. HC08C03618, styled *ARM Asset-Backed Securities, S.A. v. Max Lewinsohn et al.* (the "UK ARM Action").

The motion includes attachments of transcripts, documents, and decisions from these identified proceedings, including the decision and order dismissing the Utah Noteholder Action for forum non conveniens; the order in the UK Noteholder Action denying a motion to dismiss brought by the defendants there based on forum non conveniens;[5] forms purporting to be Maximillian & Co.'s admission of liability for "the whole claim" in the UK Declaratory Action and the UK ARM Action; and documents entitled "Particulars of Claim" from the UK ARM Action and the UK Declaratory Action.[6]

¶19    Due to a continuance, the hearing on the motions to dismiss took place on December 16, 2009.  After extensive argument, the trial court took the motions under advisement.  The following day, the trial court announced its ruling from the bench and granted the defendants' motion to dismiss ECL's complaint for forum non conveniens as to Catalyst, Roberts, and the Defendant Directors, and for improper venue as to defendant ARM.  ECL now appeals.


ISSUES AND STANDARDS OF REVIEW

¶20    To begin, ECL contends that the trial court did not apply the correct legal standard when dismissing its complaint for forum non conveniens because Utah's framework for analyzing such motions is outdated and should be replaced with a threshold test similar to that applied by the federal courts.[7]  "[W]hether the trial court

---

5.  ECL is not a party to any of the actions in the United Kingdom.

6.  Although there is no written ruling on the request for judicial notice, at the hearing on the motions to dismiss, the trial court confirmed that opposing counsel had no objection to the motion, ECL made no objection to the use of the information by the defendants, and ECL relied on portions of the information during its own argument. Thus, we treat the motion as having been granted.

7.  ECL asks us to adopt a threshold test applied in some federal courts that would preclude the trial court from declining jurisdiction here.  *See, e.g., Needham v. Phillips Petroleum Co. of Nor.*, 719 F.2d 1481, 1483 (10th Cir. 1983); *Membreno v. Costa Crociere*

(continued...)

applied the proper legal standard is a question of law that is reviewed for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177.

¶21     ECL next asserts that, even using the current Utah standard for analyzing motions to dismiss for forum non conveniens, the trial court erred in dismissing ECL's causes of action.  We review the trial court's decision to dismiss a complaint on the ground of forum non conveniens for abuse of discretion.  *See Kish v. Wright*, 562 P.2d 625, 628 (Utah 1977).

¶22     Finally, ECL argues that the trial court erred in granting ARM's motion to dismiss for improper venue based on the forum selection clause in the Subscription Agreement.  The trial court's interpretation of the forum selection clause is a question of law that we review for correctness.  *See Innerlight, Inc. v. Matrix Grp., LLC,* 2009 UT 31, ¶ 14, 214 P.3d 854 (interpreting a forum selection clause and stating that "[i]f the language within the four corners of the contract is unambiguous . . . a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law" (alteration in original)).  We review a district court's decision to enforce a forum selection clause for abuse of discretion.  *See Jacobsen Constr. Co. v. Teton Builders*, 2005 UT 4, ¶ 9, 106 P.3d 719 (citing *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 810 (Utah 1993)).  The trial court exceeds its discretion "in enforcing [a] forum selection clause [when the] clause is so unreasonable that its enforcement would be . . . against both logic and the facts on the record."  *Id*. (alterations in original) (internal quotation marks omitted).  However, "[b]ecause the district court did not hold an evidentiary hearing and relied only on documentary evidence, we use a correctness standard on review" of its decision to dismiss ECL's claims against ARM.  *See id.* ¶ 10.

---

7. (...continued)
*S.P.A.*, 425 F.3d 932, 936 (11th Cir. 2005).  However, we decline to do so because the Utah Supreme Court has adopted a different analysis to be applied to motions to dismiss for forum non conveniens.  *See Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 545-46 (Utah 1977); *see also State v. Shoulderblade*, 905 P.2d 289, 292 (Utah 1995) ("Under the doctrine of stare decisis, once a point of law is decided, that ruling should be followed by a court of . . . a lower rank in subsequent cases confronting the same legal issue.").  Consequently, we do not consider this issue further.

ANALYSIS

I. The Trial Court Did Not Exceed Its Discretion in Dismissing ECL's Claims
for Forum Non Conveniens.

¶23    Trial courts, as courts of general jurisdiction, have inherent power to dismiss an action on the basis of forum non conveniens. *See Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 546 (Utah 1977) (noting that trial courts "undoubtedly could refuse to exercise jurisdiction if convinced that it would place an unreasonable burden upon some or all of the parties, or upon the court, to try the case here"). Further, "[t]he purpose of the doctrine of forum non conveniens is to provide protection against a plaintiff selecting a remote court where added time, trouble and expense would result in unreasonable inconvenience and hardship to the defendant, when the cause could [be better] tried in a more convenient court." *Id.* at 545-46. In *Summa Corp. v. Lancer Industries, Inc.*, 559 P.2d 544 (Utah 1977), the Utah Supreme Court noted that when a trial court evaluates a motion to dismiss on the ground of forum non conveniens, the factors it should consider are

> the location of the primary parties[;] where the fact situation creating the controversy arose[;] the ease of access to proof, including the availability and costs of obtaining witnesses; the enforceability of any judgment that may be obtained; and the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern.

*Id.* at 546. The supreme court then instructed that these factors are to be considered "in the light of the particular facts of each case and [the trial court should] balance the considerations in favor of according the plaintiff the assurance" of constitutional access to the courts. *See id.; see also* Utah Const. art. I, § 11 ("All courts shall be open, and every person . . . shall have remedy by due course of law, which shall be administered without denial or unnecessary delay . . . .").

A.    The Trial Court Properly Considered the Availability of an Alternative Forum.

¶24    ECL argues that the trial court erred in numerous ways when applying the *Summa* standard.  First, ECL contends that the trial court applied the wrong legal standard by considering a factor not identified in *Summa*.  In support of this argument, ECL points to the trial court's statement that "this Court's decision is premised upon the finding that all of the defendants have conceded to the jurisdiction of the Courts of England as a more convenient forum."  However, we see nothing improper in that comment.  The trial court's consideration of this issue is consistent with the "pre-requisite required" before a court declines to exercise jurisdiction over an action "that another alternate, available forum is still open to the plaintiff."  *See Kish*, 562 P.2d at 627-29 (holding that the trial court correctly exercised its discretionary power to refuse to exercise subject matter jurisdiction on the basis of forum non conveniens, but should have dismissed the complaint without prejudice).  Because the Defendant Directors had consented to the jurisdiction of the English courts, ECL would have an alternative forum in which to pursue its claims even if the trial court declined to exercise jurisdiction over the dispute.  The trial court did not err in considering that the defendants had consented to the jurisdiction of the English courts, thereby resolving any concerns that ECL could obtain personal jurisdiction over the defendants in England.  *See, e.g., Hahn v. Diaz-Barba*, 125 Cal. Rptr. 3d 242, 253-54 (Cal. Ct. App. 2011) (affirming a trial court's stay of an action brought in California for forum non conveniens based on the consent of the defendants to the jurisdiction of the Mexican courts and stating that "[i]t is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum"); *Tilleke & Gibbins Int'l Ltd. v. Baker & McKenzie*, 756 N.Y.S.2d 179, 179-80 (N.Y. App. Div. 2003) (affirming a trial court's dismissal of an action based on forum non conveniens that was granted on the condition that the defendant submit to the jurisdiction of the courts of Thailand).

B.    Where the Causes of Action Were Factually and Legally Intertwined, the Trial Court Was Not Required To Evaluate the Claim Against the Defendant Directors Independently.

¶25    ECL next argues that the trial court erred when it dismissed ECL's first cause of action for breach of fiduciary duty against the Defendant Directors, without considering that claim separately.  According to ECL, even if we uphold the trial court's ruling with

regard to the claims against the other defendants, we should reverse with respect to the first cause of action against the Defendant Directors, because they are all United States citizens who formerly served on Eneco's board. Because Eneco was a Utah corporation, ECL contends that the Defendant Directors can show neither that they would suffer hardship if the case is tried in Utah, nor that another forum would be more convenient.

¶26    In support of its position that each cause of action must be considered separately, ECL relies on the Sixth Circuit's decision in *Duha v. Agrium, Inc.*, 448 F.3d 867 (6th Cir. 2006). There, a United States citizen sued his former employer, a Canadian parent company with both an American and Argentine subsidiary, asserting forty-five causes of action regarding the terms of his employment and subsequent termination in Argentina. *See id.* at 868-69. The district court dismissed the plaintiff's claims for forum non conveniens. *See id.* at 868. On appeal, the Sixth Circuit reversed because the trial court "dismissed many of [the plaintiff's] claims without including them in its forum non conveniens analysis," and gave "too little deference" to a United States citizen's choice of forum. *See id.* The *Duha* court reasoned that even if the district court had properly dismissed the claims for wrongful termination on forum non conveniens grounds, the plaintiff's claims for unjust enrichment, quantum meruit, silent fraud, and misrepresentation should not have been dismissed because those issues appeared to have no connection to Argentina. *See id.* at 879-81. The circuit court explained that the obligation to consider all the relevant "factors applies to each analytically distinct set of claims," and "[w]here causes of action A and B differ so much that B cannot be dismissed for the same reason as A, a district court may not dismiss B on forum non conveniens grounds merely because A appears in the same complaint." *Id.* at 879 (emphasis omitted).

¶27    Although ECL seizes on the above language from *Duha* to argue that the trial court erred in dismissing the first cause of action against the Defendant Directors, the facts present here are distinguishable. In *Duha,* the appellate court found that the district court viewed the case solely as a wrongful termination case for purposes of its forum non conveniens analysis and ignored the factually and analytically distinct remainder of the plaintiff's claims. *See id.* at 880-81. In contrast, the trial court here found that the three separate causes of action against the various defendants were factually and analytically intertwined.

¶28    Indeed, ECL's complaint alleges fifty-one paragraphs of shared factual background and then incorporates those allegations into all three claims for relief. Essentially, the complaint involves complex issues arising out of the business relationships between ECL's predecessor-in-interest, Eneco, on the one hand, and Catalyst, ARM, Roberts, and the Defendant Directors on the other. The series of business transactions that resulted in this dispute began in 2006 and include the execution of two contracts, the Catalyst Agreement and the Subscription Agreement, which each contain a choice of law and forum provision identifying England and Wales; the creation of two wholly-owned Eneco subsidiaries, Eneco Europe and Eneco Assets; and the involvement of business entities and individuals with no connection to Utah. ECL's entire conspiracy theory is premised on the assumption that Catalyst was in breach of the Catalyst Agreement, feared multi-million dollar liability and recruited the Defendant Directors to manipulate the Eneco board so as to relieve it of that liability. Indeed, ECL contends that the Subscription Agreement was nothing more than a nullification of Eneco's claims against coconspirators Catalyst, ARM, and Eneco Europe for little or no consideration. As a result, the breach of fiduciary duty claims necessarily involve the assessment of whether Catalyst was, in fact, in breach of the Catalyst Agreement and, if so, the estimate of the magnitude of any resulting liability that may have motivated Catalyst to engage in a conspiracy with the other defendants. Unlike the complaint in *Duha*, ECL's first cause of action against the Defendant Directors for breach of fiduciary duty is factually and legally intertwined with the claims against the other defendants. Under the facts present here, we agree with the trial court that the claims against the Defendant Directors could be considered in light of the broader dispute involving the other defendants.

C.    Despite ECL's Choice of Forum, the Trial Court Did Not Exceed Its Discretion in Dismissing the Complaint.

¶29    Next, ECL argues that the trial court erred in dismissing all three of ECL's causes of action because, as the plaintiff, ECL's choice of forum is entitled to deference and the findings on the record do not support a dismissal for forum non conveniens in contravention of that choice. In *Summa*, the supreme court indicated that "the general policy of the law is that when a plaintiff has commenced a lawsuit and acquired jurisdiction over the defendant, he should be allowed to pursue his remedy; and that such a motion to dismiss should be granted only with great caution and under compelling circumstances." *See Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 546

(Utah 1977). The federal courts also favor the plaintiff's choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, when a plaintiff chooses its home forum, "it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." *Id.* at 255-56; *accord Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Thus, courts typically afford significantly less deference to the choice of forum by a foreign plaintiff. *See, e.g., Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998); *Stangvik v. Shiley Inc.*, 819 P.2d 14, 20 (Cal. 1991). While Utah has not expressly adopted a similar view concerning nonresident plaintiffs, the reasons for the distinction are persuasive. Unlike a plaintiff who resides in Utah, a foreign plaintiff's choice of forum is not obviously convenient. Second, while the Utah courts have a strong interest in assuring that Utah residents have access to the Utah courts for the resolution of their disputes, the interest that runs to foreign entities or individuals is weaker.

¶30 ECL is a British Virgin Islands company that purchased its claims from an English sole proprietorship, Maximillian & Co., that, in turn, bought the claims from Eneco's bankruptcy trustee. While the trial court was required to exercise "great caution" before preventing ECL from pursuing its claims in Utah, it was not required to assign determinative weight to ECL's choice of forum in balancing the *Summa* factors. *See Summa*, 559 P.2d at 546. Rather, the trial court had to consider each of the *Summa* factors and decide whether this case presents the type of compelling circumstances where, despite ECL's choice of forum, the dispute does not warrant the exercise of the Utah courts' subject matter jurisdiction. *See id.* We now consider whether the trial court properly considered each of the *Summa* factors.

¶31 First, the trial court addressed the location of the primary parties, *see id.* at 546, stating that "none of the parties are Utah residents." ECL does not dispute that this is apparent from the complaint. While the trial court acknowledged that ECL purchased its claims via Maximillian & Co. from a now defunct Utah corporation, it concluded that any proceeds from the litigation "would enure to the benefit of a British Virgin Island resident," ECL.[8]

---

8. For the first time in its reply brief on appeal, ECL argues that some of ECL's shareholders include former Eneco shareholders who reside in Utah and, thus, if there were proceeds from the litigation that were paid to former Eneco shareholders, a benefit

(continued...)

¶32   Next, the trial court focused on "where the fact situation creating [the] controversy arose," *see id*.  While ECL argues that the tort claims for breach of fiduciary duty, conspiracy, and aiding and abetting can each be considered in isolation, the trial court reached a different conclusion based on its review of the complaint.  Recognizing "a close interrelationship between [ECL's] tort claims and the agreements[,] which are at issue in this case," the trial court found "that the majority of the transactions alleged by plaintiff in this complaint occurred largely in Europe and England."  As discussed previously, the breach of fiduciary duty is premised upon Catalyst's alleged breach of the Catalyst Agreement.  The financial services contemplated by that agreement involved the sale of stock in Eneco Europe, a company formed to hold the stock of Eneco Assets, which in turn, held the right to exploit Eneco's patents in the United Kingdom.  The fundraising efforts pursuant to the Catalyst Agreement included the issuance of bonds by ARM, which were to be offered on the Channel Island Stock Exchange and governed by the rules of England's Financial Services Authority.  Further, ECL claims that the defendants falsely represented that over $5 million had been placed with English solicitors as a commitment from "a major European private investment bank."  When Eneco became concerned that Catalyst had not accurately reported these facts, it hired counsel in the United Kingdom to investigate its legal claims and to identify potential defendants.

¶33   From the face of the complaint, the trial court found that the facts related to the implosion of the European capital-raising efforts, including the truthfulness of the communications concerning those efforts, must be unraveled in order to assess the propriety of subsequent events involving the Defendant Directors.  Indeed, ECL contends that Catalyst, ARM, and Roberts initiated the conspiracy and aided the Defendant Directors' breaches of fiduciary duties due to the damage to Catalyst's business reputation caused by the insolvency administration of Eneco Europe in England.  Considering the allegations of the complaint, the trial court acknowledged that, while some harm may have occurred in Utah, the majority of the facts creating the

---

8. (...continued)
would enure to these Utah residents.  However, this information was never presented to the trial court.  Once the defendants asserted in their motion to dismiss that "[n]one of the parties is from Utah and the dispute does not involve issues of local interest," ECL was required to alert the trial court if it claimed that the litigation was a matter of local concern due to the residency of some of ECL's shareholders.

controversy arose in Europe.  Our reading of the complaint is in-line with that of the trial court, and we agree that the "fact situation creating [the] controversy" arose primarily in Europe.

¶34    The trial court then evaluated the "ease of access to proof, including the availability and costs of obtaining witnesses," *see id.*  Although ECL identified some Eneco witnesses located in Utah, the trial court found "that the primary defendants, Catalyst, Roberts, ARM, and their employees are in either England or in Luxembourg, and the [Defendant Directors] reside outside of the State of Utah.  Therefore, this court is satisfied that most of the witnesses and parties reside outside of Utah."  In addition, the trial court found that because the transactions alleged in the complaint occurred outside of Utah, "[t]he documents regarding the transactions additionally can be expected to be located principally outside of Utah where the primary defendants reside, although . . . Eneco documents are expected to be located in Utah."  The trial court therefore concluded that "easier access to proof, both documentary and testimonial, is more convenient . . . in England."  While ECL points to documents located in Utah due to the bankruptcy proceedings and some witnesses with Utah connections, it does not dispute the trial court's findings regarding the location of the named parties.  Instead, ECL contends that the trial court's assumptions about the location of those parties' documents were not supported by sufficient evidence.  In support, ECL correctly notes that in *Summa Corp. v. Lancer Industries, Inc.*, 559 P.2d 544 (Utah 1977), and *Mooney v. Denver & Rio Grande Western Railroad Co.*, 118 Utah 307, 221 P.2d 628 (1950),[9] the Utah Supreme Court reversed dismissals based on forum non conveniens because the evidence of inconvenience to the defendants was inadequate.  *See Summa*, 559 P.2d at 547; *Mooney*, 221 P.2d at 647-49.  While we agree with ECL that better factual support for the forum non conveniens argument would have been helpful to the trial court, we

---

9. Even after a remittitur that permitted the defendant to provide "somewhat more in detail its anticipated hardship and inconvenience," the trial court again denied the motion to dismiss for forum non conveniens and, after a trial and verdict against the defendant, the Utah Supreme Court affirmed that decision.  *See Mooney v. Denver & R.G.W.R. Co.*, 118 Utah 307, 257 P.2d 947, 948-49 (1953).

are convinced that the complaint provided enough information to conclude that *Summa* and *Mooney* are distinguishable.[10]

¶35    In *Mooney*, the plaintiff was a Colorado resident who was injured in Colorado by the alleged negligence of the defendant, Rio Grande Western Railroad Company, a Delaware corporation with its principal place of business in Salt Lake City. *See* 221 P.2d at 629-30. The plaintiff filed suit in Utah, and the trial court granted the defendant's motion to dismiss the complaint on the ground of forum non conveniens. *See id.* at 630. The Utah Supreme Court reversed, first asserting that the defendant conducted a "substantial amount" of business in Utah, *see id.* at 630, 649, and then criticizing the defendant for presenting only minimal evidence to support its motion for forum non conveniens, *see id.* at 648. Specifically, the defendant presented only one affidavit, which indicated that a trial in Utah would be inconvenient because the majority of its witnesses were located in Colorado and could not be compelled to appear in Utah, it would have to pay its expert witnesses more to travel to Utah, the jury would not be able to view the site of the accident, and the Utah trial courts' already congested docket would be further burdened by the case. *See id.*at 630, 647-48.

¶36    In determining that this evidence was insufficient, the supreme court began by highlighting that "[t]he contents of the affidavit filed by the defendant were controverted," *id.* at 647-48, and that "a substantial amount of [the affidavit] adopted by the court [was] hearsay," *id.* at 648. However, the supreme court also attacked the defendant's affidavit for its lack of specificity, indicating that the witnesses were not identified by either name or residence, and there was no explanation of why a view of the site of the accident would be helpful to the jury. *See id.* Finally, the supreme court challenged the defendant's premise that resolving the dispute in Utah would be inconvenient for the courts of Utah, reasoning that the defendant's evidence did not indicate that the Utah courts were particularly busy, and noting that the plaintiff was

---

10. It appears that because Catalyst, Roberts, and ARM did not submit more evidence on this point, the focus of their arguments in the trial court was that the claims against them were governed by the forum selection clauses in the Catalyst Agreement and, as to ARM, the Subscription Agreement. Thus, they argued that the clauses should be enforced unless the plaintiffs met their burden of convincing the court that enforcement of the forum selection provisions would be "unfair or unreasonable." *See Prows v. Pinpoint Retail Sys.*, 868 P.2d 809, 812 (Utah 1993).

not given the opportunity to refute the defendant's evidence on that issue. *See id.* at 649. In reaching its conclusion, the court noted that although the witnesses may reside in Colorado, they might live far enough from Denver that similar expenses may have been incurred in trying the case there. *See id.* at 648. Where the defendant had its principal place of business in Salt Lake City, the accident occurred and the witnesses were located in an adjacent state, and the defendant ran a railroad that serviced both cities, it is not surprising that the supreme court concluded that the affidavit was insufficient to warrant dismissal. *See id.* at 630, 647-49.

¶37 Here, the only connection any party has to Utah is that ECL bought the claims of a now-defunct Utah corporation from a foreign entity, Maximillian & Co. Although the defendants submitted only one declaration, the trial court relied on the face of the complaint to determine that the majority of the parties, witnesses, and documents were located in Europe and that the heart of the dispute arose from transactions in Europe. And ECL does not dispute that the employees of those foreign entities and their documents are not located in Utah. Rather, ECL points to the fact that a significant number of documents have been transported to Utah and produced in connection with the Eneco bankruptcy proceedings. While the trial court acknowledged that those documents had been produced in Utah, it deemed the greater number of parties, witnesses, and documents to be located outside of Utah, with the majority of them to be found in Europe, the situs of most of the events and parties described in the complaint.

¶38 Furthermore, as opposed to *Mooney*, where the trial court relied on speculation about the general burden on the Utah courts, the trial court here examined the specific claims asserted in the complaint and compared the burden of resolving the allegations in the Utah courts with the corresponding interest of Utah in the resolution of the matter. After assessing these benefits and burdens, the trial court concluded that while Utah had a minimal interest in the case, the courts and the citizens of Utah would shoulder an enormous burden if the litigation were allowed to proceed in Utah. Finally, we note that *Mooney* was decided before the Utah Supreme Court decided *Summa*, where the court adopted a balancing test to be applied by the trial court in determining whether to dismiss an action on the ground of forum non conveniens.[11]

---

11. Most jurisdictions that have considered the issue have adopted a balancing test under which the trial court considers a number of private and public factors to

(continued...)

¶39    In *Summa*, one of the named defendants was a Utah limited partnership, *see* 559 P.2d at 545, and the defendant's main justification for his motion was the "logistics of arranging for testimony, and/or depositions of witnesses from Florida and California," *see id.* at 547.  In addition to the argument that these logistics were minor, the *Summa* plaintiff argued that the lawsuit "involve[d] only $16,000" and that "it ha[d] already gone to considerable trouble and expense in engaging counsel" in Utah and "getting the action under way." *Id.*  The supreme court agreed that the defendant's basis for inconvenience was insufficient, especially because it would be "an unreasonable burden" to make the plaintiff initiate another lawsuit in a different state where the amount of money in controversy was so small.  *See id.*  In the present case, none of the defendants are Utah residents, the witnesses are located in Europe rather than a sister state, and the amount in controversy is $150 million.  Given these appreciable differences, we are not persuaded that *Summa* required the trial court to deny the defendants' motions to dismiss for forum non conveniens.

¶40    While ECL justifiably attacks the lack of specificity in the single declaration provided by the defendants, the trial court's decision was based on its conclusion that the allegations in the complaint sufficiently illustrate that Utah is not a convenient forum.  Based on those allegations, the trial court concluded that ECL's tort claims were part of a much more complicated dispute that involved the European activities of the primarily European defendants, and that the evidence and witnesses needed to determine whether the defendants were liable in tort were located primarily in Europe. We agree that the complaint supports the trial court's conclusion that the majority of the witnesses and documents are maintained outside of Utah and are located primarily in Europe.

---

11.  (...continued)
determine whether the action should be dismissed for forum non conveniens.  *See Koskar v. Ford Motor Co.*, 923 N.Y.S.2d 901, 902 (N.Y. App. Div. 2011) (applying a balancing test to assess a forum non conveniens motion); *accord Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135, 142 (Cal. Ct. App. 2011) (same); *Yousef v. General Dynamics Corp.*, 16 A.3d 1040, 1049 (N.J. 2011) (same); *Sales v. Weyerhaeuser Co.*, 177 P.3d 1122, 1125 (Wash. 2008) (same).

¶41 The next factor from *Summa* that the trial court considered was "the enforceability of any judgment that may be obtained," 559 P.2d at 546. Because the trial court determined that any judgment would be enforceable in England or Utah, it did not find that this factor compelled a result in either direction. ECL challenges the trial court's treatment of this factor on several grounds, including that its lawyers cannot appear pro hac vice in England and thus ECL would be deprived of its choice of counsel; the English courts do not permit representation on a contingent fee basis; ECL would not have a right to jury trial or punitive damages; and it would have to post a significant cost bond. Although the circumstances under which ECL may litigate in England are not identical to those in the United States, the distinctions identified do not equate to a conclusion that a judgment from the English courts would not be enforceable.

¶42 To begin, the forum non conveniens analysis is focused on whether the plaintiff, not the plaintiff's lawyers, can bring the action in an alternate forum. *See, e.g., Langenhorst v. Norfolk S. Ry. Co.*, 848 N.E.2d 927, 938-39 (Ill. 2006) ("[T]he location of the parties' attorneys is accorded little weight in determining a forum non conveniens motion." (emphasis omitted)); *Engstrom v. Bayer Corp.*, 2004 PA Super. 223, ¶ 13, 855 A.2d 52 (affirming an order in which the trial court noted that the "out-of-state plaintiffs . . . chose to file in Philadelphia County for no apparent reason other than the fact that their attorneys have their offices here—a fact of no relevance to a forum non conveniens analysis" (emphasis omitted) (internal quotation marks omitted)).

¶43 Next, although there are no Utah cases that explain the way in which a trial court should balance the forum non conveniens factors when a foreign forum is available that the plaintiff views as less favorable than the chosen United States forum, several federal courts have addressed the issue. Most notably, in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), the United States Supreme Court considered the argument of the beneficiaries of the estates of Scottish citizens who were killed in a plane crash occurring in Scotland that they should be permitted to sue the manufacturers of the plane and its propeller in the United States to obtain the benefits of this country's more favorable laws on "liability, capacity to sue, and damages." *See id.* at 239-40. In that case, the district court granted the defendants' motion to dismiss for forum non conveniens and the Third Circuit Court of Appeals reversed. *See id.* at 238. On certiorari review, the Supreme Court reversed the circuit court's decision, explaining that "the central focus of the forum non conveniens inquiry is convenience." *Id.* at 247-

49. Although the Supreme Court acknowledged that the plaintiffs "may not be able to rely on a strict liability theory" and their "potential damages award may be smaller," it held that Scotland provided an adequate alternative forum.[12] *Id.* at 255. Thus, "*Piper Aircraft* establishes that the law in the United Kingdom need not be identical to U.S. law, or even as favorable to plaintiffs as U.S. law may be." *In re Factor VIII or IX Concentrate Blood Prods. Litig. v. Bayer Corp.*, 484 F.3d 951, 957 (7th Cir. 2007); *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144-45 (9th Cir. 2001) (noting that New Zealand was an adequate alternative forum even if it does not allow the plaintiffs to maintain the same suit or recover as much money as in the United States). According to the Ninth Circuit, "[t]he effect of *Piper Aircraft* is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144. Where the Utah Supreme Court has not indicated otherwise, we consider these decisions instructive. Thus, we are not convinced that England is an inadequate alternative forum and that ECL cannot obtain an enforceable judgment in the English courts.

¶44 Finally, the trial court analyzed "the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern." *Summa*, 559 P.2d at 546. The trial court again noted that none of the parties are Utah residents; that any benefit from the case would enure to ECL, a British Virgin Islands company; and that any local interest was weak because Eneco, the Utah corporation, no longer exists. The trial court then reasoned that despite this minimal local interest, the court and the citizens of Utah "would be taking on . . . what amounts to an enormous burden of time, expense and resources to maintain this litigation. This is a complex case, which correspondingly increases and burdens the resources necessary to properly manage this

---

12. The *Piper Aircraft* Court identified a number of factors that make the courts of the United States attractive to foreign plaintiffs, including the concept of strict liability, the right to a jury trial, the ability to hire an attorney on a contingent fee basis, the absence of the risk of paying the successful party's attorney fees, and the availability of more extensive discovery. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 252 n.18 (1981). Nevertheless, it concluded that these factors were not determinative in the forum non conveniens inquiry. *See id.* at 247-51.

litigation."[13]  Thus, the trial court concluded that "when you balance the tenuous nature of the local interest and issues in this particular case, this factor strongly favors England as a more convenient forum because the issues of local interest again are very tenuous." On appeal, ECL continues to argue that the claims in the complaint arise out of the breaches of fiduciary duty by the directors of a Utah corporation.  However, where the Utah corporation has dissolved, the Defendant Directors are not located in Utah, and none of the parties to the lawsuit is a Utah resident, we agree with the trial court that the connection to this state is tenuous.

¶45     The trial court next analyzed the burden on the defendants if the motion were to be denied.  In doing so, the trial court was "satisfied that there is sufficient[ly] great hardship evident from the face of the complaint, and that the defendants would have to expend significant sums of money [and] resources to travel to and from Utah, to hire local counsel, to obtain documents, [and to] have them sent to Utah."  ECL contends that the fact that Catalyst initiated an adversary proceeding in Eneco's Utah bankruptcy proceedings is evidence that the trial court's finding are not supported.  However, once Eneco filed its petition with the United States Bankruptcy Court for the District of Utah, Catalyst was required to file its adversary proceeding in that forum.  *See* 28 U.S.C. § 1409(a) (2006) ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."); *see also Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004) ("[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." (internal quotation marks omitted)).  Thus, we are not

---

13.  We further note that, due to the Catalyst Agreement's and the Subscription Agreement's choice of law provisions, and our prior conclusion that the fiduciary duty claims are dependent, in part, on an interpretation of those agreements, the Utah court may have been faced with the additional burden of ascertaining and applying the law of England and Wales.  *See, e.g., Kinney Sys., Inc. v. Continental Ins. Co.*, 674 So. 2d 86, 92 (Fla. 1996) (including the fact that "foreign law will predominate if jurisdiction is retained" as a factor in favor of granting a motion to dismiss for forum non conveniens (internal quotation marks omitted)); *First Eng. Funding, LLC v. Aetna Life Ins. & Annuity Co.*, 790 A.2d 243, 245 (N.J. Super. Ct. App. Div. 2002) (providing that forum non conveniens factors include "the avoidance of . . . the application of foreign law" (internal quotation marks omitted)).

convinced that Catalyst's prosecution of its claim in the Eneco bankruptcy is indicative of whether the trial court exceeded its discretion in weighing the *Summa* factors. Likewise, whether the bankruptcy proceedings were more or less involved than the litigation of the complaint would be, the trial court was not required to view Catalyst's pursuit of its adversary action in the only available forum as a concession that Utah is a convenient forum.[14]

¶46    To a large extent, this case presents a question of the amount of discretion to be afforded the trial court's decision granting or denying a motion to dismiss for forum non conveniens. "It is [the] general rule that the trial court's discretion to invoke the doctrine of forum non conveniens will not be interfered with by an appellate court, absent an abuse of discretion." *Kish v. Wright*, 562 P.2d 625, 628 (Utah 1977); *see also Piper Aircraft Co.*, 454 U.S. at 257 ("[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference."). Here, we are convinced that the trial court identified and considered each of the *Summa* factors, and its conclusion is reasonable. Therefore, we will not disturb its decision.

### II.   The Trial Court Did Not Err in Enforcing the Forum Selection Clause in the Subscription Agreement.

¶47    ECL also challenges the trial court's decision granting ARM's motion to dismiss for improper venue. The trial court based its ruling on the choice of forum provision of the Subscription Agreement, which provides,

> 8. Any dispute, controversy or claim arising out of or related to the agreement shall be brought exclusively before the courts of England & Wales.

---

14. We are also unconvinced that Catalyst's contracts with third parties on unrelated matters that include forum selection clauses designating other cities in the United States is determinative of whether the trial court properly dismissed the complaint at issue for forum non conveniens. The issue before the trial court was whether the *Summa* factors, as applied to the facts and circumstances of this case, warranted dismissal in favor of a more convenient forum.

9. This agreement shall be governed by, and construed and enforced in accordance with the laws of England & Wales.

ARM and ECL's predecessor-in-interest, Eneco, are both parties to the Subscription Agreement, with a right to enforce the forum selection clause. *See First Inv. Co. v. Andersen*, 621 P.2d 683, 686 (Utah 1980) ("[T]he assignee . . . [stands] in the shoes of the assignor and [takes] subject to existing equities and defenses."). Therefore, ARM contends that ECL, as Eneco's successor-in-interest, could not sue ARM in Utah. Although ECL tacitly concedes that it is bound by the Subscription Agreement's forum selection clause to the same extent as Eneco, it argues that the claims against ARM in the complaint do not arise out of and are not related to the Subscription Agreement. "When interpreting a contract, we begin by looking within the four corners of the contract 'to determine the parties' intentions, which are controlling.'" *Innerlight, Inc. v. Matrix Grp., LLC*, 2009 UT 31, ¶ 14, 214 P.3d 854 (quoting *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 16, 52 P.3d 1179). If the language of the contract is unambiguous, we will determine the parties' intentions from the four corners of the document. *See id.*

A.     The Claims Asserted Against ARM Fall Within the Scope of the Forum Selection Clause.

¶48    The trial court ruled that the allegations of the complaint were a "dispute, controversy or claim arising out of or related to" the Subscription Agreement and, therefore, were improperly brought in Utah. Pointing to the fact that its causes of action sound in tort, ECL contends that the forum selection clause does not apply to its complaint.

¶49    Specifically, ECL notes that the complained-of activities predate the formation of the Subscription Agreement, a fact the Southern District of New York considered determinative in *Armco Inc. v. North Atlantic Insurance Co.*, 68 F. Supp. 2d 330 (S.D.N.Y. 1999). *See id.* at 338-40. There, a corporation, Armco, and four of its subsidiaries filed a complaint against various entities and individuals asserting causes of action for "fraud, conversion, breach of fiduciary duty, and violation of the Federal Racketeer Influenced and Corrupt Organizations Act." *Id.* at 333. The dispute involved Armco's decision to divest itself of a group of its insurance subsidiaries, the North Atlantic Group (group), through a management buy-out by the managing director and chairman of the group.

*See id.* at 333-34. Armco's complaint alleged that the executives it assigned to negotiate the buy-out on its behalf (executive defendants), through entities controlled by them, conspired with the purchasers to buy the group jointly and to enter into a contract of sale detrimental to Armco. *See id.* As part of the sale, Armco contributed over $40 million to the purchasing entity to cover pay-outs on pre-existing insurance policies as they became due. *See id.* The contract of sale was executed in 1991 and included a forum selection clause that designated England as the choice of forum "to settle any dispute which may arise out of or in connection with this Agreement." *See id.* at 334, 338. After the purchase and until their activities were discovered in 1997, the executive defendants allegedly used a subsidiary of the group (NAIC) to withdraw trust funds fraudulently, eventually driving NAIC into bankruptcy, and to otherwise divert funds to themselves through excessive fees, dividends, and commissions. *See id.* at 334-35. Armco and the other plaintiffs sued in the United States District Court for the Southern District of New York to recover funds they claimed were taken under false pretenses, and the defendants moved to dismiss based on the forum selection clause in the contract of sale. *See id.* at 335, 337. The district court declined to enforce the forum selection clause because it determined that the action did not arise out of the sale contract, but instead "arose out of the alleged wide ranging fraud, including numerous acts committed before the execution of the Sale Contract." *Id.* at 338. In particular, the *Armco* court concluded that the "cause of action for breach of fiduciary duty is not also based on the terms or relationships embodied in the Sale Contract" but upon the failure of the executive defendants to disclose their interest in the purchasing entity. *See id.* at 339.

¶50    In contrast, the trial court here concluded that the forum selection clause in the Subscription Agreement "is sufficiently broad and encompassing to include the allegations set forth in the plaintiff's complaint." Unlike the situation in *Armco*, ECL's cause of action for breach of fiduciary duty is based on terms embodied in the Subscription Agreement. ECL alleges that by entering into the Subscription Agreement, the Defendant Directors, in a conspiracy with ARM and the other defendants, discharged Catalyst's liability for inadequate consideration, thereby breaching their fiduciary duties to Eneco. The Subscription Agreement allegedly embodies the breaches of fiduciary duty and is the product of the alleged conspiracy.

¶51    Unlike the *Armco* court, we conclude that the tort claims here fall within the plain language of the Subscription Agreement. The agreement governs "any dispute,

controversy or claim" that is "related to" the Subscription Agreement. The tort claims are related to the Subscription Agreement, and the use of "any" does not support a distinction between tort or contract claims. Consequently, we agree with the trial court that the parties intended that the forum selection clause apply to claims, whether sounding in tort or contract, that are related to the agreement. *See Innerlight*, *Inc. v. Matrix Grp., LLC*, 2009 UT 31, ¶ 14, 214 P.3d 854 ("We find that there is no ambiguity in the relevant provisions of the Contract and therefore look to the plain meaning of the contractual terms to determine the parties' intent."); *see also Coombs v. Juice Works Dev., Inc.*, 2003 UT App 388, ¶ 6 n.3, 81 P.3d 769 (stating in dicta, "[T]he Agreement expressly provides that 'any action arising out of or relating to this Agreement' shall be brought in Arkansas courts. . . . This language appears to account for both tort and contract claims that arise out of or relate to the Agreement." (emphasis omitted)).

B.      The Trial Court Did Not Exceed Its Discretion in Enforcing the Forum Selection Clause.

¶52     Utah courts give effect to a forum selection clause unless "'it is unfair or unreasonable.'" *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 812 (Utah 1993) (quoting Restatement (Second) Conflict of Laws § 80 (Supp. 1988)). "To meet this burden, a plaintiff must demonstrate that the chosen state would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust." *Id.* (internal quotation marks omitted). "A party might also show that . . . the *choice-of-forum provision* was obtained by fraud, duress, the abuse of economic power, or other unconscionable means . . . ." *Id.* at 812 n.5 (emphasis added) (internal quotation marks omitted). Although ECL suggests briefly that obtaining the Subscription Agreement in furtherance of a conspiracy may render the clause unenforceable based on "unconscionable means," its argument is inadequately briefed and we do not consider it. *See* Utah R. App. P. 24(a)(9).[15]

¶53     In considering whether to enforce a forum selection clause, the court should avoid a decision that will result in multiple legal actions. *See Prows*, 868 P.2d at 812-13.

---

15. ECL devotes only two paragraphs of its fifty-page brief to the complex issue of whether the forum selection clause is unenforceable because the Subscription Agreement was allegedly entered in furtherance of a conspiracy in which the Defendant Directors breached their fiduciary duties to Eneco.

In *Prows v. Pinpoint Retail Systems, Inc.*, 868 P.2d 209 (Utah 1993), the Utah Supreme Court explained that to require that the matter be tried in multiple forums against different defendants "contravenes the objective of modern procedure, which is to litigate all claims in one action if that is possible." *Id.* at 813 (internal quotation marks omitted). In addition, it "increases the cost of litigation." *Id.* Here, the question of whether Catalyst breached the Catalyst Agreement and any claim related to the Subscription Agreement must be tried in England or Wales. A refusal to enforce the forum selection clause in the Subscription Agreement would have resulted in multiple litigations in separate jurisdictions.

¶54    For all these reasons, we conclude that ECL has not met its burden of demonstrating that enforcing the forum selection clause would be "unjust." *See id.* at 812. We, therefore, affirm the trial court's decision dismissing ECL's complaint against ARM based on improper venue under rule 12(b)(3) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 12(b)(3).[16]


CONCLUSION

¶55    The trial court did not exceed its discretion in dismissing ECL's complaint for forum non conveniens where none of the parties is a Utah resident, the primary defendants and witnesses are located in Europe, and all defendants have consented to the jurisdiction of the English courts, providing ECL an alternative forum. The trial court correctly interpreted the forum selection clause in the Subscription Agreement and correctly dismissed the claims against ARM for improper venue.

¶56    Affirmed.


_____
Carolyn B. McHugh,
Associate Presiding Judge

_____

16. For the same reasons discussed in part I of this decision, the claims against ARM could also have been dismissed for forum non conveniens.


20100128-CA              28

-----

¶57    WE CONCUR:


_____

J. Frederic Voros Jr., Judge


_____

Stephen L. Roth, Judge