*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 13**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ENERGY CLAIMS LIMITED,
*Petitioner,*

*v.*

CATALYST INVESTMENT GROUP LIMITED, TIMOTHY ROBERTS,
ARM ASSET-BACKED SECURITIES, S.A., CHARLES P. BAKER,
THOMAS DEPETRILLO, CHARLES BECKER, and ROBERT BEURET,
*Respondents.*

No. 20120156
Filed May 9, 2014

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake Dep't
The Honorable Tyrone E. Medley
No. 090900505

Attorneys:

Jefferson W. Gross, Salt Lake City, for petitioner

Charles D. Shmerler, James H. Neale, Jami Mills Vibbert,
James L. Barnett, and Darren G. Reid, Salt Lake City, for respondents
Catalyst Investment Group Limited, Timothy Roberts, and
ARM Asset-Backed Securities, S.A.

Reid W. Lambert and Anthony M. Grover, Salt Lake City,
for respondents Christopher P. Baker, Thomas DePetrillo,
Charles Becker, and Robert Beuret

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 Energy Claims Limited (ECL), a British Virgin Islands
company, filed suit in Utah district court, asserting a now defunct

Utah corporation's claims against that corporation's former directors, Catalyst Investment Group Limited (Catalyst), Mr. Timothy Roberts, and ARM Asset-Backed Securities, S.A. (ARM). All of the defendants reside, or have their principal place of business, outside of Utah. The district court dismissed ECL's claims against the former directors, Catalyst, and Mr. Roberts on the basis of forum non conveniens. It also dismissed the claims against ARM for improper venue based on a forum selection clause. The court of appeals affirmed these dismissals.

¶2 We granted certiorari to consider (1) whether we should adopt a threshold choice-of-law inquiry before undertaking a forum non conveniens analysis; (2) whether the court of appeals erred in affirming dismissal of ECL's claims against the directors, Catalyst, and Mr. Roberts for forum non conveniens; and (3) whether the court of appeals erred in affirming dismissal of ECL's claims against ARM for improper venue. As discussed below, we decline ECL's invitation to adopt the threshold choice-of-law test. But we nevertheless conclude that the court of appeals erred in affirming dismissal on the basis of forum non conveniens and on the basis of improper venue. Accordingly, we remand this case for further proceedings consistent with this opinion.

## BACKGROUND[1]

¶3 ECL is a British Virgin Islands company and has its principal place of business in Tortola, British Virgin Islands. It is the assignee of certain claims of Eneco, Inc. (Eneco), a now defunct Utah Corporation. Eneco incorporated under Utah law in 1991 and eventually focused its research and development on thermal chip technology. A group of lenders, referred to by the parties as the "2005 Noteholders," provided millions of dollars in initial loans, which were secured by patent rights that Eneco had previously obtained.

¶4 In 2006, however, Eneco's board of directors (Eneco's Board), which then consisted of Mr. Harold Brown, Mr. Max Lewinsohn, Mr. Patrick Murrin, and Mr. Charles Becker, determined

---

[1] When reviewing a motion to dismiss, "we view the facts and construe the complaint in the light most favorable to the plaintiff and indulge all reasonable inferences in his favor." *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 810 (Utah 1993) (internal quotation marks omitted). We accordingly recite the facts consistent with ECL's complaint.

that Eneco would need an additional $5 million to develop a commercially viable product. To this end, Eneco engaged the services of Catalyst, a United Kingdom (UK) company whose principal place of business is in London, England. The result of this engagement was an agreement (Catalyst Agreement) for Catalyst to provide general corporate financial advice and to assist Eneco in the issuance of $40 million in convertible corporate bonds. Catalyst represented that it would raise a minimum of $5 million for Eneco by September 30, 2006. The Catalyst Agreement contained a forum selection and choice-of-law provision, which provided that the "[a]greement shall be governed by, and construed in accordance with the Laws of England, and the parties hereto submit to the exclusive jurisdiction of the Courts of England and Wales."

¶5　Catalyst further proposed that the bonds being sold to raise funds for Eneco would also benefit ARM, a joint-stock company incorporated under the laws of the Grand Duchy of Luxembourg and based principally in Luxembourg. Catalyst, acting as ARM's agent, recommended that Eneco issue an investment bond, the C3 Bond, that would in turn be made up of other bonds issued by Eneco and ARM. It further advised Eneco to form two subsidiaries: Eneco Assets, Ltd. (Eneco Assets) and Eneco Europe, PLC (Eneco Europe). Catalyst advised Eneco to sell the right to use Eneco's patents in the UK to Eneco Assets. Eneco Europe would purchase shares of Eneco Assets, and Catalyst would in turn sell shares of Eneco Europe to third-party investors. Catalyst represented that this approach would raise the $5 million Eneco needed to develop its product.

¶6　To facilitate this approach, Catalyst advised Eneco to convert the debt it owed to the 2005 Noteholders into equity. Eneco informed Catalyst, ARM, and Mr. Timothy Roberts—a UK resident and an executive director for Catalyst as well as a director and agent for ARM--that the 2005 Noteholders would be unlikely to go along with the conversion absent assurances of Catalyst's success in raising funds for Eneco. Mr. Roberts accordingly provided written assurances that Catalyst had raised the $5 million necessary for Eneco. ECL alleges that these assurances were false and that, in reliance on these false assurances, Eneco treated the 2005 Noteholders' loans as having been converted to equity.

¶7　In early 2007, Eneco's Board became concerned when Catalyst failed to deliver the funds as promised. Eneco hired legal counsel in the UK to investigate Catalyst and others for fraud and breach of the Catalyst Agreement. In response, Catalyst, ARM, and Mr. Roberts approached Mr. Becker, a resident of Texas, to seek his cooperation in reconstituting Eneco's Board in an effort to relieve

Catalyst and ARM of Eneco's claims. Catalyst offered to pay Mr. Becker or his company $300,000 toward development of Eneco's technology to secure his cooperation. ECL alleges that Catalyst, ARM, Mr. Roberts, and Mr. Becker then recruited Mr. Christopher Baker, Mr. Robert Beuret, and Mr. Thomas DePetrillo, who were each investment bankers familiar to Catalyst, as acceptable additions to Eneco's Board. Mr. Baker and Mr. Beuret are both residents of Massachusetts, and Mr. DePetrillo is a resident of Rhode Island. Mr. Becker did not disclose to Eneco's Board his agreement with Catalyst, ARM, and Mr. Roberts.

¶8 Mr. Becker, Mr. Baker, Mr. DePetrillo, and Mr. Beuret (collectively, the Director Defendants) then secretly acquired proxies from Eneco's shareholders to successfully reconstitute Eneco's Board and gain a controlling vote.[2] ECL alleges that, "once in control," the Director Defendants sought "to accommodate their own interests and the interests of Catalyst, ARM and [Mr.] Roberts at the expense of Eneco." Specifically, ECL alleges that the Director Defendants listed Eneco's shares publicly, enriched themselves with fees, and declined to conduct a special shareholders meeting as required by law—all pursuant to a conspiracy financed by Catalyst, ARM, and Mr. Roberts.

¶9 By late 2007, Eneco was in default to the 2005 Noteholders. Eneco had no means to cure the default, and its Board acknowledged that the previous conversion of the debt to equity was improper. Mr. Lewinsohn, acting through Maximillian & Co. (Maximillian), an English sole proprietorship, notified Eneco that the 2005 Noteholders had appointed Maximillian as their collateral agent. Maximillian then made a number of proposals to resolve the default favorably to Eneco and to reconstitute Eneco's Board, all of which were rejected by the Defendant Directors. As a result, Mr. Lewinsohn and Mr. Murrin resigned as directors of Eneco. Further, Mr. Lewinsohn and Maximillian, on behalf of the 2005 Noteholders, began procedures to foreclose on Eneco's patent rights.

¶10 Also at this time, Eneco Europe went "into administration under the laws of the United Kingdom due to its insolvency." This was apparently detrimental to Catalyst's business reputation, so Catalyst sought to make Eneco Europe solvent again. ECL alleges that Mr. Roberts and Catalyst accomplished this effort by inducing

---

[2] With the addition of the Director Defendants, Eneco's Board then consisted of Mr. Baker, Mr. Becker, Mr. Beuret, Mr. DePetrillo, Mr. Brown, Mr. Lewinsohn, and Mr. Murrin.

the Director Defendants, without consideration, to forgive Eneco Europe's debt to Eneco.

¶11 In early January 2008, the Director Defendants entered into an agreement with Catalyst, ARM, and Mr. Roberts (Subscription Agreement) in which ARM agreed to finance Eneco's expected bankruptcy by purchasing $225,000 worth of shares in Eneco in return for a release of any prior commitment for ARM to provide funding to Eneco. The Subscription Agreement "supercede[d] and revoke[d]" any prior commitments from Catalyst, ARM, and Mr. Roberts. The Subscription Agreement contained a forum selection clause providing that "[a]ny dispute, controversy or claim arising out of or related to the agreement shall be brought exclusively before the courts of England [and] Wales." It also contained a choice-of-law provision, which stated that the "agreement shall be governed by, and construed and enforced in accordance with the laws of England [and] Wales." ECL alleges that the Director Defendants "essentially caused Eneco to release million dollar claims against the Defendants for fraud and breach of contract in exchange for $225,000."

¶12 Eneco subsequently filed for Chapter 11 bankruptcy in the United States Bankruptcy Court of the District of Utah. In June 2008, Eneco's court-appointed trustee converted the case to a Chapter 7 bankruptcy and liquidated Eneco's assets. And in November 2008, the trustee assigned Eneco's causes of action to ECL in exchange for $750,000.

¶13 ECL then filed three claims in the Third Judicial District Court of Utah on January 9, 2009, including (1) a claim for breach of fiduciary duty against the Director Defendants; (2) a claim for civil conspiracy against the Director Defendants, Catalyst, ARM, and Mr. Roberts; and (3) a claim for aiding and abetting breaches of fiduciary duty against Catalyst, ARM, and Mr. Roberts. All of the parties named in the complaint reside, or have their principal place of business, outside of Utah.

¶14 Catalyst and Mr. Roberts filed separate motions to dismiss ECL's complaint based on forum non conveniens. ARM also moved to dismiss for lack of personal jurisdiction and improper venue based on the Subscription Agreement's forum selection clause.[3] The Director Defendants later joined in Catalyst's and Mr. Roberts's

---

[3] The district court did not reach ARM's lack of personal jurisdiction claim, and it is not before us on appeal.

motion to dismiss on forum non conveniens grounds and consented to the jurisdiction of English courts.

¶15 The district court granted the motions. It dismissed ECL's claims against Catalyst, Mr. Roberts, and the Director Defendants for forum non conveniens. In so doing, it analyzed and balanced five factors to conclude that England is a more appropriate forum for this dispute: (1) the location of the parties; (2) the primary location of the fact situation creating the controversy; (3) the location of evidence and witnesses; (4) the enforceability of any judgment; and (5) the burden on the court of litigating matters that may be of limited local concern.

¶16 The court also dismissed the claims against ARM for improper venue, concluding that the forum selection clause in the Subscription Agreement is sufficiently broad to encompass ECL's tort claims. The court of appeals affirmed as to both motions to dismiss.[4] We granted certiorari and have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶17 "On certiorari we review the decision of the court of appeals, not the decision of the trial court. In doing so, we review for correctness, giving the court of appeals' conclusions of law no deference."[5] Additionally, we "apply the same standard of review used by the court of appeals."[6]

## ANALYSIS

¶18 We first consider ECL's proposal that we adopt a choice-of-law inquiry as a threshold to our forum non conveniens analysis. Next, we consider whether the court of appeals erred in affirming dismissal as to the Director Defendants, Catalyst, and Mr. Roberts for forum non conveniens. Finally, we consider whether the court of appeals correctly upheld the dismissal of ARM based on the forum selection clause in the Subscription Agreement.

I. WE REJECT ECL'S PROPOSED THRESHOLD CHOICE-OF-LAW INQUIRY BECAUSE IT IS INCONSISTENT WITH THE NEED TO

---

[4] *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2012 UT App 32, ¶ 55, 275 P.3d 257.

[5] *Grand Cnty. v. Rogers*, 2002 UT 25, ¶ 6, 44 P.3d 734 (internal quotation marks omitted).

[6] *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 855 (Utah 1998).

RETAIN FLEXIBILITY IN OUR FORUM NON CONVENIENS
ANALYSIS

¶19 ECL invites us to adopt a threshold choice-of-law inquiry that would require Utah courts to first determine whether Utah law applies to a given dispute and, if so, bar dismissal on forum non conveniens grounds without undertaking a forum non conveniens analysis. ECL's proposed test comes from the Tenth Circuit. In *Gschwind v. Cessna Aircraft Co.*, the Tenth Circuit stated that "[t]here are two threshold questions in the forum non conveniens determination: first, whether there is an adequate alternative forum . . . and second, whether foreign law applies. If the answer to either of these questions is no, the forum non conveniens doctrine is inapplicable."[7] The first prong of the threshold test is uncontroversial. All courts consider the availability of an adequate alternative forum at the outset of a forum non conveniens analysis.[8]

¶20 The Tenth Circuit goes a step further, however, by requiring a second threshold determination that foreign law applies to the dispute. It is apparently the only federal circuit court to require this threshold determination in cases not governed by federal statutes.[9] And even when a federal statute does govern the dispute, not all circuits require the threshold determination.[10] We decline to follow

---

[7] 161 F.3d 602, 605–06 (10th Cir. 1998) (citations omitted).

[8] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum."); *see also Kish v. Wright*, 562 P.2d 625, 627–28 (Utah 1977) (stating "that the pre-requisite required [for forum non conveniens] is that another alternate, available forum is still open to the plaintiff").

[9] *See* Lonny Sheinkopf Hoffman & Keith A. Rowley, *Forum Non Conveniens in Federal Statutory Cases*, 49 EMORY L.J. 1137, 1182 (2000) (analyzing federal approaches to forum non conveniens in disputes governed by federal statute and recognizing that the Tenth Circuit has gone a step beyond other courts by "requiring a finding that foreign law governs as a prerequisite to conducting [a forum non conveniens analysis]—even in non-federal statutory cases" (footnote omitted)).

[10] *See, e.g.*, *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (citation omitted) ("While . . . United States courts have an interest in enforcing United States securities laws, this alone

(continued)

the Tenth Circuit and instead conclude that ECL's proposed test is inconsistent with the need to retain flexibility in the forum non conveniens analysis.

¶21 Our decision on this point is supported by the United States Supreme Court's analysis in *Piper Aircraft Company v. Reyno*.[11] In *Piper*, the Supreme Court held that "the possibility of an unfavorable change in law should not, by itself, bar dismissal" on forum non conveniens grounds.[12] The case involved a wrongful-death action stemming from a plane crash in Scotland.[13] The plane and its propellers were manufactured in the United States, and the plaintiff filed suit in California because United States tort law was more favorable than Scotland's.[14]

¶22 After the case was transferred to Pennsylvania, the defendants moved to dismiss for forum non conveniens, and the district court concluded that Scotland provided a more appropriate forum for the dispute.[15] The Third Circuit reversed. It determined that dismissal for forum non conveniens was inappropriate if it worked a change in the applicable law unfavorable to the plaintiff.[16] The Supreme Court disagreed and concluded that "[t]he possibility of a change in substantive law should ordinarily not be given

---

does not prohibit them from dismissing a securities action on the ground of forum non conveniens.").

[11] 454 U.S. at 238. While federal authority of course does not control our decision in this case, we consider it highly persuasive given our sparse case law on the doctrine of forum non conveniens. Since we first applied the doctrine in *Mooney v. Denver & R.G.W.R. Co.*, 221 P.2d 628 (Utah 1950), we have only revisited the issue twice. *See Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544 (Utah 1977); *Kish*, 562 P.2d 625. In both instances, we cited heavily to federal authority. *See, e.g.*, *Summa*, 559 P.2d at 546 (citing the United States Supreme Court's decision in *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947), for the appropriate factors to consider when conducting a forum non conveniens analysis).

[12] *Piper*, 454 U.S. at 238.

[13] *Id.* at 238–40.

[14] *Id.* at 240.

[15] *Id.* at 241.

[16] *Id.* at 246.

conclusive or even substantial weight in the *forum non conveniens* inquiry."[17]

¶23 ECL correctly points out that *Piper* addressed the issue of a change in law incident to a change in forum—not whether dismissal is appropriate when the plaintiff files in a forum whose law applies. But *Piper* applies persuasively to both situations. First, *Piper* recognized that "[i]f substantial weight were given to the possibility of an unfavorable change in law, . . . dismissal might be barred even where trial in the chosen forum was plainly inconvenient."[18] The same is true for ECL's proposed test. Dismissal would be barred whenever Utah law applies to the dispute, regardless of whether litigation in the chosen forum was plainly inconvenient.

¶24 Second, *Piper* emphasized the need to "retain flexibility" in the forum non conveniens analysis and to avoid rigid rules: "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable."[19] This point is also true for ECL's proposed test. If Utah law applies to a dispute, then ECL's threshold test would prevent us from considering any other factor that might weigh strongly in favor of litigating the dispute in another jurisdiction. This is the very rigidity that *Piper* rejected.

¶25 Finally, *Piper* recognized that "if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless" because plaintiffs ordinarily "select that forum whose choice-of-law rules are most advantageous."[20] Likewise, our forum non conveniens analysis will lose much of its application under ECL's proposed test because many disputes—like the instant case—are governed by choice-of-law provisions. If one such provision favored Utah law, we would be unable to dismiss under ECL's threshold test regardless of how inconvenient litigation in Utah might be. For all these reasons, we conclude that ECL's proposed threshold test is inconsistent with the need to maintain flexibility in the forum non conveniens analysis and accordingly decline to adopt it.

---

[17] *Id.* at 247.

[18] *Id.* at 249.

[19] *Id.* at 249–50.

[20] *Id.* at 250.

## II. THE COURT OF APPEALS FAILED TO GIVE ADEQUATE DEFERENCE TO ECL'S CHOICE OF FORUM AND FAILED TO BALANCE ECL'S POTENTIAL BURDEN OF HAVING TO LITIGATE IN ENGLAND

¶26 "An evaluation of a motion to dismiss on the grounds of *forum non conveniens* proceeds in several stages."[21] At the first stage, courts must determine whether the plaintiff's choice of forum is entitled to deference.[22] Next, courts "determine whether an adequate alternative forum exists."[23] If an adequate alternative forum exists, courts then proceed to the final stage "and balance factors of [convenience] to decide, based on weighing the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant."[24]

¶27 We review a dismissal on forum non conveniens grounds for an abuse of discretion.[25] We reverse only if (1) "the district court relied on an erroneous conclusion of law" or (2) "there was no evidentiary basis for [its] ruling."[26] While this standard is highly deferential, it requires us to reverse when a lower court fails to "follow the governing legal standards."[27]

¶28 ECL argues that reversal is appropriate in this case because the court of appeals failed to follow the governing legal standard in affirming the district court's dismissal for forum non conveniens. It argues that the court of appeals (1) gave too little deference to its choice of forum and (2) failed to consider its potential burden of having to litigate in England.[28] We discuss these points in turn and

---

[21] *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Kish v. Wright*, 562 P.2d 625, 628 (Utah 1977).

[26] *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (internal quotation marks omitted).

[27] *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc).

[28] ECL presents three additional arguments in support of its claim that the court of appeals erred in affirming dismissal on the basis of

(continued)

conclude that the court of appeals erred both in assigning less deference to ECL's choice of forum than it would were ECL a Utah corporation and in failing to properly consider and balance its potential burden of having to litigate in England. Having clarified the applicable legal standard, we leave the final decision as to the appropriate outcome of the forum non conveniens analysis to the district court on remand. But to assist the court in this respect, we offer some instruction on the convenience factors we articulated in *Summa Corporation v. Lancer Industries, Inc.*[29]

### A. Because This Case Has a Bona Fide Connection to Utah, the Court of Appeals Erred in Assigning Less Deference to ECL's Choice of Forum

¶29 The court of appeals concluded that "courts typically afford significantly less deference to the choice of forum by a foreign plaintiff" than to a resident plaintiff because that choice "is not obviously convenient."[30] But ECL contends that, because it is asserting the claims of a Utah corporation in Utah, the court of appeals erred in affording less deference to its choice of forum. We agree.

¶30 As a general matter, a plaintiff's choice of forum is entitled to deference when the plaintiff has brought suit in its home jurisdiction.[31] A foreign plaintiff who sues in the United States, however, is generally entitled to less deference.[32] But these general

---

forum non conveniens. First, it argues that the evidence of inconvenience to the Director Defendants, Catalyst, and Mr. Roberts was inadequate and that, more specifically, the court of appeals erred by looking to ECL's complaint for evidence of inconvenience. Second, it contends that the court of appeals' decision conflicts with the Open Courts provision in the Utah Constitution. And finally, it claims that, even if dismissal was appropriate as to Catalyst and Mr. Roberts, the court of appeals erred in not requiring the district court to allow ECL to proceed against the Director Defendants in Utah. Because we base our decision on the legal errors discussed above, we decline to reach these arguments.

[29] 559 P.2d 544 (Utah 1977).

[30] *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2012 UT App 32, ¶ 29, 275 P.3d 257.

[31] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 & 256 n.23 (1981); *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

[32] *Piper*, 454 U.S. at 255–56.

rules do not address the unique issue presented in this case: a foreign plaintiff asserting the claims of a Utah corporation in that corporation's home jurisdiction.

¶31 For guidance on this issue, we turn to the Second Circuit's decision in *Iragorri v. United Technologies Corp.* There, the court addressed the level of deference required for a United States plaintiff's choice of forum in a United States district other than that of the plaintiff's home district.[33] The court explained that the general rules of deference discussed above are based on the idea that "a plaintiff's choice of her home forum . . . is presumed to be convenient."[34] The same is not true for a foreign plaintiff, whose choice of a United States forum is more likely related to reasons that have nothing to do with convenience, such as forum shopping for higher damages awards.[35] But the court rejected the idea that "deference is given to the plaintiff's choice of forum only when the plaintiff sues in the plaintiff's home district" and warned against using citizenship as a "proxy" for convenience.[36]

¶32 It determined instead that the general rules of deference outlined above stand for a broader principle "that we give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons."[37] It concluded:

> the greater the plaintiff's or the lawsuit's bona fide connection . . . to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*.[38]

¶33 We agree with the Second Circuit's reasoning and accordingly analyze whether ECL's choice of Utah as its forum for litigating its claims was motivated by legitimate reasons. *Iragorri* tells us that one such legitimate reason is the "plaintiff's or the lawsuit's

---

[33] 274 F.3d at 71.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 72, 74.

[37] *Id.* at 73.

[38] *Id.* at 72 (footnotes omitted).

bona fide connection . . . to the forum of choice."[39] Here, ECL, as a British Virgin Islands company, did not have the option of bringing suit in its home jurisdiction of Tortola because that jurisdiction had no connection to the facts of this case. After Eneco went into bankruptcy and ECL purchased its claims, ECL was forced to choose between Utah and England as the jurisdictions with the strongest factual connections to Eneco's claims. It was entirely reasonable and legitimate for ECL to select Utah as its forum of choice. Utah was, after all, Eneco's home jurisdiction and presumably the jurisdiction Eneco itself would have chosen if it were suing on its own behalf. We accordingly conclude that ECL's choice of Utah is entitled to deference given ECL's lawsuit's bona fide connection to Utah.

¶34  Another factor that "necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit."[40] In selecting its forum, ECL was faced with the task of securing personal jurisdiction over both the Catalyst Defendants and the Director Defendants, whose residences and principal places of business are scattered among London, Luxembourg, Massachusetts, Rhode Island, and Texas. At the outset of litigation, Utah appeared to be the only jurisdiction in which ECL could properly sue all the defendants.[41] Therefore, ECL's choice of Utah is also legitimate and entitled to deference on the ground that it appeared necessary to sue here to obtain jurisdiction over both the Catalyst and Director Defendants. We accordingly conclude that the court of appeals failed to give adequate deference to ECL's selection of Utah as its forum of choice.

*B. The Court of Appeals Failed to Properly Consider and Balance ECL's Potential Burden of Having to Litigate in England*

¶35  The appropriate level of deference for a plaintiff's choice of forum is merely the first step in the forum non conveniens analysis. Regardless of the level of deference due, courts must still analyze and weigh the convenience factors we set forth in *Summa*.[42] ECL

---

[39] *Id.*

[40] *Id.*

[41] The defendants later consented to jurisdiction in England for purposes of their motions to dismiss.

[42] *See id.* at 73 ("The deference given to a plaintiff's choice of forum does not dispose of a *forum non conveniens* motion. It is only the first level of inquiry. Even after determining whether the

(continued)

challenges the court of appeals' analysis of the *Summa* factors on the ground that it failed to properly analyze and consider ECL's potential burden of having to reinstate its suit in England. Again, we agree.

¶36  In *Summa*, we outlined five factors to guide a court's forum non conveniens analysis.[43] These factors include (1) "the location of the primary parties"; (2) the location "where the fact situation creating the controversy arose"; (3) "the ease of access to proof, including the availability and costs of obtaining witnesses"; (4) "the enforceability of any judgment that may be obtained"; and (5) "the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern."[44] These factors, however, are not exclusive.[45] We stress again that the forum non conveniens analysis is a flexible one and should take account of all relevant considerations.[46]

¶37  Even in *Summa* we recognized that, in addition to the five factors outlined above, courts must take into account the practical burden plaintiffs will face in filing a new action after dismissal for forum non conveniens.[47] Although we did not explain exactly how consideration of the plaintiff's burden should factor into the overall analysis, we now clarify that it should be considered as one of the relevant factors in the overall balance of convenience. In *Summa*, for example, we balanced the defendant's alleged inconvenience of having to litigate in Utah—"the logistics of arranging for testimony, and/or depositions of witnesses from Florida and California"— against the plaintiff's burden of "again going through [the] total process in another state" of "engaging counsel [and] initiating and

---

plaintiff's choice is entitled to more or less deference, a district court must still conduct the analysis [of the convenience factors].").

[43] 559 P.2d at 546.

[44] *Id.*

[45] *See id.* (stating that the five factors are merely "among the factors proper to be considered").

[46] *Piper*, 454 U.S. at 249–50.

[47] *Summa*, 559 P.2d at 547; *see also Pollux*, 329 F.3d at 75 (stating that courts must "weigh defendant's hardships if jurisdiction is retained in the forum of plaintiff's choice against plaintiff's hardships if the motion to dismiss is granted and plaintiff is forced to begin suit anew in a different forum").

getting the action under way."[48] This is consistent with the approach taken by the majority of federal courts that "a plaintiff's financial hardships . . . [are] one factor to be weighed in determining the balance of convenience."[49] Accordingly, the court of appeals should have analyzed whether the district court properly considered and balanced ECL's potential burden of having to litigate in England.

¶38 ECL alleges that, if forced to litigate in England, it would (1) be deprived of its choice of counsel and ability to pursue its claims on a contingent fee basis; (2) lose its claim under Utah law for punitive damages; and (3) need to post a bond sufficient to cover the defendants' attorney fees. Although the district court properly recognized that it should weigh the *Summa* factors against considerations favoring ECL in its forum non conveniens analysis, it never specifically analyzed or balanced ECL's alleged hardships. And the court of appeals discussed ECL's burden exclusively in terms of whether "England is an inadequate alternative forum" or whether "ECL [could] obtain an enforceable judgment in the English courts."[50] But, as discussed above, the adequacy of England as an alternative forum is a separate inquiry distinct from the question of ECL's potential burden, which should be considered as a single factor in the overall convenience analysis.[51] The court of appeals accordingly erred in failing to properly consider and balance ECL's alleged burden.

### C. Instructions for Remand

¶39 While we leave it to the district court on remand to reexamine the defendants' motion to dismiss for forum non conveniens in light of the clarifications we make above, we take the opportunity to make two points concerning the convenience factors we articulated in *Summa*. First, in analyzing the third *Summa* factor—"the ease of access to proof"[52]—both the district court and the court

---

[48] *Summa*, 559 P.2d at 547.

[49] *See Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir. 1996) (discussing federal authority and concluding that a majority of courts treat the plaintiff's financial hardship as one factor to be weighed in the balance of convenience).

[50] *Energy Claims*, 2012 UT App 32, ¶ 43.

[51] *Murray*, 81 F.3d at 292 (stating that plaintiff's financial hardship should be weighed as a single factor "*after* the court determines that an alternative forum is available").

[52] *Summa*, 559 P.2d at 546.

of appeals commented on the location of documentary evidence.[53] We clarify that the location of documentary evidence is of little relevance to the overall forum non conveniens analysis. Given that in today's world litigants can easily transport electronic documents to virtually any forum of litigation, the location of documentary evidence will rarely, if ever, tip the scale of convenience in favor of a given jurisdiction.

¶40 Next, both the district court and the court of appeals analyzed the fifth *Summa* factor—"the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern"[54]—and concluded that "the court and the citizens of Utah would be taking on . . . what amounts to an enormous burden of time, expense and resources to maintain this litigation" in light of the "minimal local interest" involved.[55] We clarify now that the relevance of this factor hinges on the level of deference afforded the plaintiff's choice of forum. If a plaintiff chooses Utah for legally legitimate reasons, as we have concluded ECL has done here, then the burden on the court in question carries little weight.

¶41 Thus, if the plaintiff can offer legally legitimate reasons for selecting Utah as the forum of choice and has established personal jurisdiction over the defendant, that is sufficient to outweigh any burden the courts or citizens of Utah might face in litigating the matter. With these clarifications, we remand to the district court for further analysis of the defendants' motion to dismiss for forum non conveniens.

## III. IF THE DISTRICT COURT DETERMINES THAT THE FORUM SELECTION CLAUSE IS ENFORCEABLE, IT SHOULD INCLUDE THE CLAUSE AS AN ADDITIONAL FACTOR IN ITS FORUM NON CONVENIENS ANALYSIS

¶42 In addition to the factors discussed above, there is another wrinkle in this case, as one of the defendants, ARM, relies upon a forum selection clause in its opposition to ECL's choice of forum. We will now consider what role this clause should play in the district court's forum non conveniens analysis.

---

[53] *Energy Claims*, 2012 UT App 32, ¶ 34.

[54] *Summa*, 559 P.2d at 546.

[55] *Energy Claims*, 2012 UT App 32, ¶ 44 (alteration in original) (internal quotation marks omitted).

¶43 The court of appeals concluded that the plain language of the forum selection clause in the Subscription Agreement encompassed ECL's tort claims against ARM.[56] It also concluded that the district court did not exceed its discretion in enforcing the forum selection clause and sending ECL's claims against ARM to England.[57] The court of appeals' decision on this point was influenced heavily by its forum non conveniens ruling that would have sent ECL's claims against the Director Defendants, Catalyst, and ARM to England as well. The court stated that "[a] refusal to enforce the forum selection clause in the Subscription Agreement would have resulted in multiple litigations in separate jurisdictions."[58] That is, ECL would have had to proceed against ARM in Utah and against all the other defendants in England. According to the court of appeals, that result was unacceptable because it would "increase[] the cost of litigation" and "contravene[] the objective of modern procedure, which is to litigate all claims in one action if . . . possible."[59]

¶44 Our decision above to remand the forum non conveniens issue to the district court for a reevaluation of the convenience factors, however, renders the court of appeals' concerns hypothetical at this point. Depending on the outcome of the district court's forum non conveniens analysis—which, as explained below, should also include consideration of the forum selection clause in ARM's contract—ECL's claims against the Director Defendants, Catalyst, and Mr. Roberts could either remain in Utah or be sent to England. But the court of appeals' concerns are nevertheless well founded. Our decision as to the scope of the forum selection clause—one way or the other—could force ECL to litigate in both Utah and England, just as the court of appeals feared. Nevertheless, despite the fact that modern rules of procedure look unfavorably upon bifurcating trials between two jurisdictions—particularly where those trials are based upon the same set of operative facts—we conclude that the district court should have the discretion to reach such a result based on the outcome of its forum non conveniens analysis. We also conclude that, if enforceable, ARM's forum selection clause should be weighed

---

[56] *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2012 UT App 32, ¶ 51, 275 P.3d 257.

[57] *Id.* ¶ 53.

[58] *Id.*

[59] *Id.* (internal quotation marks omitted).

in the district court's forum non conveniens analysis. Accordingly, we conclude as follows regarding ARM's forum selection clause.

### A. *The Court of Appeals Did Not Err in Its Conclusion that the Forum Selection Clause Includes the Tort Claims*

¶45 The clause at issue here governs "any dispute, controversy or claim" that is "related to" the parties' contract.[60] Both the district court and the court of appeals determined that this broad language, particularly the use of the term "any," does not support a distinction between contract claims and tort claims. We agree. As the court of appeals observed, "ECL's cause of action for breach of fiduciary duty is based on terms embodied in the [contract.]"[61] Accordingly, ECL's claims clearly "relate to" the contract and fall within the broad category of "any dispute, controversy or claim." Thus, we agree with the court of appeals' conclusion that the forum selection clause is sufficiently broad to cover the tort claims.

### B. *Prior to Including the Forum Selection Clause in Its Forum Non Conveniens Analysis, the District Court Must Determine Whether It Is Enforceable*

¶46 Nevertheless, even if the forum selection clause's scope is broad enough to encompass ECL's claims, before the district court can include the forum selection clause in its forum non conveniens analysis, it must first address the issue of whether that clause is enforceable. ECL argues that the contract itself, including the forum selection clause, is unenforceable because it was the product of a civil conspiracy. Typically, on a motion to dismiss "we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff."[62] We have also suggested that this standard may apply even where the motion to dismiss is brought for lack of jurisdiction.[63] Under this

---

[60] *Energy Claims*, 2012 UT App 32, ¶ 51 (internal quotation marks omitted).

[61] *Id.* ¶ 50.

[62] *Berneau v. Martino*, 2009 UT 87, ¶ 3, 223 P.3d 1128 (internal quotation marks omitted).

[63] In the case of *In re Uintah Basin*, we reviewed a district court's dismissal for lack of subject matter jurisdiction and noted that the factual allegations taken from the petitioner's compliant "must be deemed true" and that "this court must consider all reasonable inferences to be drawn therefrom in a light most favorable to [petitioner]." 2006 UT 19, ¶ 14 n.7, 133 P.3d 410. Nevertheless, in that

(continued)

standard, it could be argued that ECL's allegation of civil conspiracy would be sufficient to render the forum selection clause unenforceable. This issue—whether an allegation of civil conspiracy, standing alone, is sufficient to render a forum selection clause unenforceable—is a question of first impression for our court. For the reasons stated below, we conclude that the district court should analyze the forum selection clause based upon the standard articulated below, holding an evidentiary hearing, if necessary. Then, depending on the outcome of its analysis, the district court should include an assessment of the forum selection clause as a factor in its forum non conveniens analysis.

1. We Adopt the Minority Position Regarding the Issue of How a District Court Should Treat Allegations of Fraud in the Face of a Contract Containing a Forum Selection Clause

¶47   We have accepted the general principle that forum selection clauses are enforceable and can limit a court's jurisdiction. This principle was adopted in *Prows v. Pinpoint Retail Systems, Inc.*, where we adopted section 80 of the Second Restatement of Conflict of Laws: "The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable."[64] Under this principle, forum selection clauses that "have been obtained through freely negotiated agreements and are not unreasonable and unjust" will be upheld as valid.[65] The party opposing enforcement of the clause "bears the burden of proving that enforcing the clause is unfair or unreasonable," or "that (1) the choice-of-forum provision was 'obtained by fraud, duress, the abuse of economic power, or other unconscionable means'; or (2) the courts of the chosen state 'would be closed to the suit or would not handle it effectively or

---

case we also looked to other factual allegations outside the complaint, as "set forth by the United States in its answer and counterclaim filed in the federal court and attached as an addendum to its brief." *Id*. Furthermore, *Uintah Basin* did not involve a forum selection clause. Thus, to the extent that footnote 7 of *Uintah Basin* is inconsistent with the standard we articulate today, we repudiate it.

[64] 868 P.2d 809, 812 (Utah 1993) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 (Supp. 1988)).

[65] *Phone Directories Co. v. Henderson*, 2000 UT 64, ¶ 15 n.9, 8 P.3d 256 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)) (internal quotations marks omitted).

fairly.'"[66] Thus, we have adopted both the general principle that forum selection clauses are enforceable and that there are exceptions to that principle.[67]

¶48 We have not directly addressed, however, what a plaintiff must allege or prove to prevent enforcement of a forum selection clause where it is claimed that the clause was "obtained by fraud, duress, the abuse of economic power, or other unconscionable means."[68] Accordingly, we will look to our sister states for guidance regarding this issue.[69]

¶49 Other jurisdictions have adopted two ways of dealing with the issue of a forum selection clause that is contained within an allegedly fraudulent contract.[70] The first, and the majority

---

[66] *Prows*, 868 P.2d at 812 n.5 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 cmt. c (Supp. 1988)).

[67] There is a difference under Utah law between enforcing a forum selection clause against plaintiffs and defendants. Generally, when filing in another state is required by the parties' agreement, plaintiffs are barred from bringing suit in a Utah court unless they can prove one of the listed exceptions. As against a defendant, a forum selection clause requiring that a case be filed in Utah creates a presumption that a Utah court has jurisdiction over a defendant as long as the defendant cannot prove one of the exceptions and there is a "rational nexus between the forum selected . . . and either the parties to the contract or the transactions that are the subject matter of the contract." *Henderson*, 2000 UT 64, ¶ 14.

[68] *Prows*, 868 P.2d at 812 n.5 (internal quotation marks omitted).

[69] *State v. Montiel*, 2005 UT 48, ¶ 15, 122 P.3d 571 (observing that "[b]ecause Utah case law is not fully developed on this issue, we look to the case law from other jurisdictions for guidance" (internal quotation marks omitted)).

[70] ECL did not raise a fraud claim in its complaint but instead claimed that Catalyst, the board members, and ARM entered into the contract through "unconscionable means" in furtherance of a civil conspiracy. The tortious conduct or "unconscionable means" alleged by ECL here is the defendants' breach of their fiduciary duties. Still, ECL's claim is analogous to the fraud cases we cite herein because ECL is likewise claiming that the clause was obtained through improper means. The fraud cases are largely based in contract, and ECL's claim is premised on allegedly tortious conduct, but the exception we adopted in *Prows* encompasses both types of claims,

(continued)

approach,[71] is to require the plaintiff to make a specific claim, supported by evidence, "show[ing] that the forum-selection clause *itself* was procured through fraud."[72] This is the approach adopted by California, Texas, and the Fifth and Tenth Circuits,[73] and it seems

---

since it relates to the issue of "overreaching" generally. *See Prows*, 868 P.2d at 812 n.5 ("A party might also show that . . . the choice-of-forum provision was 'obtained by fraud, duress, the abuse of economic power, or other unconscionable means.'" (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80, cmt. c (Supp. 1988)); *Pohl, Inc. of America v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944 (noting that a civil conspiracy claim is a "separate and distinct cause[] of action" but that it may be premised on tortious conduct). So although we largely cite cases which discuss forum selection clauses obtained by "fraud," our analysis applies equally to all allegations of overreaching that we referred to in *Pohl*, including those of ECL.

[71] *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1162 (Colo. Ct. App. 2006) (observing that "every other court to have addressed this issue has agreed that, to render a forum selection clause unenforceable, the party seeking to avoid the clause must show that *the clause itself* was procured by fraud" (emphasis added) (citing cases)); s*ee also* Michael D. Moberly & Carolyn F. Burr, *Enforcing Forum Selection Clauses in State Court*, 39 SW. L. REV. 265, 282 (2009) (discussing Colorado's adoption of this approach as the "view taken by most other courts").

[72] *In re Harris Corp.*, No. 03-13-00192-CV, 2013 WL 2631700, at *5 (Tex. Ct. App. June 4, 2013).

[73] *See AMS Staff Leasing NA, Inc. v. Superior Court*, No. G032507, 2004 WL 1435928, at *2 (Cal. Ct. App. June 28, 2004) (unpublished) ("[A] claim of fraudulent inducement does not defeat [a forum selection clause] unless the fraud claim constitutes a separate and distinct challenge to the . . . clause itself." (internal quotation marks omitted)); *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 102 (Tex. App. 2002) ("[A] court determining whether or not to enforce a forum selection clause will not inquire into the enforceability of the contract in which that clause is found.") (abrogation on other grounds recognized by *Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842, 846 (Tex. App. 2011)); *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) ("Fraud and overreaching must be specific to a forum selection clause in order to invalidate it."); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992)

(continued)

to stem from the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*[74] The best example of this approach was explained in *Afram Carriers, Inc. v. Moeykens*, where the Fifth Circuit observed that "[a]llegations that the entire contract was procured as the result of fraud or overreaching are *inapposite* to our [forum-selection clause] enforceability determination, which must . . . precede any analysis of the merits [of the contract's validity]."[75] Instead, the party is required to make "a showing that *the clause* results from fraud or overreaching."[76]

¶50 The reasoning for this approach was explained by the Texas Court of Appeals:

> A party cannot avoid enforcement of a forum-selection clause by asserting that the contract containing the clause was procured through fraud. As one court explained, [t]o allow a party to avoid its obligations under a presumptively valid contract with a prima facie valid forum-selection clause *simply because the party might carry its burden at trial* would give the party an end run around the presumption that the forum-selection clause is enforceable.[77]

In other words, the majority approach is tailored to dispel the fear that a party could avoid the enforcement of a forum selection clause "by merely alleging fraud or coercion in the inducement of the contract at issue."[78] Thus, under this approach, all forum selection

---

("A plaintiff seeking to avoid a choice provision on a fraud theory must . . . plead fraud going to the specific provision.").

[74] 407 U.S. 1, 15 (1972) ("The correct approach would have been to *enforce the forum clause specifically* unless Zapata could clearly show that enforcement would be unreasonable and unjust, or that *the clause* was invalid for such reasons as fraud or overreaching." (emphases added)).

[75] 145 F.3d 298, 301 (5th Cir. 1998) (alterations in original) (emphasis added) (internal quotation marks omitted).

[76] *Id.*

[77] *In re Harris Corp.*, 2013 WL 2631700, at *5 (alteration in original) (emphasis added) (internal quotation marks omitted).

[78] *A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 430 (S.D.N.Y. 1992).

clauses are presumed[79] to be valid, even when the validity of the entire contract is in question, and even when the validity of the contract is central to the suit.[80]

¶51 The second (and minority) approach is to allow a plaintiff's claim that the contract was entered into fraudulently to be sufficient to render the forum selection clause unenforceable. At least three states[81] have adopted this line of reasoning: New York, Georgia and Tennessee.[82] The benefit of this approach is that it protects defrauded plaintiffs from being forced to litigate fraudulent contracts in a potentially inconvenient forum not of their choosing.

¶52 We now side with the minority approach on this issue. The major flaw with the majority approach is that the district court must accept as valid a provision in a contract despite the plaintiff's contention that the entire contract was induced by fraud. We also find it problematic that the majority approach imposes upon the

---

[79] Moberly & Burr, *supra* note 71, at 267 (observing that forum selection clauses are "presumptively valid in most states").

[80] *See, e.g.*, *Clark*, 192 S.W.3d at 800 (rejecting plaintiffs' argument that the forum selection clause should not be enforced "because a successful suit would result in the contracts [at issue] being ruled void").

[81] Missouri may also be leaning in this direction. *See Burke v. Goodman*, 114 S.W.3d 276, 280 (Mo. Ct. App. 2003) (analyzing enforcement of a forum selection clause by first determining whether or not the contract was adhesive, stating that "the forum selection clause must have been obtained through freely negotiated agreements").

[82] *See, e.g.*, *DeSola Grp., Inc. v. Coors Brewing Co.*, 199 A.D.2d 141, 141–42 (N.Y. App. Div. 1993) (reversing a lower court's decision that had incorrectly followed the majority approach by stating that the "plaintiff's allegations of fraud pervading the Agreement would render the entire Agreement void, [rendering] the forum selection clause contained therein . . . unenforceable"); *SRH, Inc. v. IFC Credit Corp.*, 619 S.E.2d 744, 746 (Ga. Ct. App. 2005) (holding that "the trial court erred in dismissing the case on the basis of a forum selection provision in [a] contract alleged to have been procured by fraud"); *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000) ("[F]raud in the underlying transaction renders a contract clause, such as the forum selection clause at issue here, unenforceable.").

plaintiff the burden of making a "separate and distinct challenge" to the forum selection clause itself, when the only support the plaintiff has—the allegation that the entire contract and all of the provisions contained therein are fraudulent—is deemed to be necessarily inadequate. The application of this approach may also result in defrauded plaintiffs being forced to litigate a contract that is ultimately deemed fraudulent in a different forum as the result of a provision they never bargained for.

¶53 We recognize, however, that the majority approach does have the effect of avoiding the task of determining whether a contract is valid at the motion to dismiss stage. Instead, it reserves that issue until further discovery can be done, at which point that issue can be adjudicated on its merits with the benefit of full discovery. This notwithstanding, we conclude that the minority approach is more consistent with our case law[83] and with the standard of review employed at the motion to dismiss stage. We are also not persuaded that the minority approach will allow plaintiffs to freely dodge forum selection clauses, since (a) they are required to plead fraud with particularity, and (b) the district court has the discretion to order an evidentiary hearing, both of which will assure that valid forum selection clauses are not rejected based on the pleadings alone.

---

[83] We recognize that our cases could be construed as supporting both the majority and minority approaches. For example, in *Prows v. Pinpoint Retail Systems, Inc.*, we seemed to prefer the majority approach when we held that "a plaintiff who brings an action in violation of the choice-of-forum provision bears the burden of proving that *enforcing the clause* is unfair or unreasonable," and that "[a] party might also show that . . . the *choice-of-forum provision was obtained by fraud*." 868 P.2d 809, 812 & n.5 (Utah 1993) (emphases added) (internal quotation marks omitted). On the other hand, in support of the minority approach, we stated in *Phone Directories Co. v. Henderson* that "the traditional defenses allowing one to avoid an *unfair or unreasonable contract*, such as duress and fraud, are available to parties litigating the validity of a forum," and that such provisions are only upheld when "obtained through *freely negotiated agreements*." 2000 UT 64, ¶ 15 & n.9, 8 P.3d 256 (emphases added) (internal quotation marks omitted).

2. The Requirement to Plead Fraud with Particularity Protects Against Improper Rejection of a Forum Selection Clause Due To "Artful Pleading"

¶54 When plaintiffs bring lawsuits in violation of forum selection clauses, they must make a showing that there is an acceptable reason not to enforce the clause. Specifically, they must show that enforcement of the clause is "unfair or unreasonable," or "that (1) the choice-of-forum provision was obtained by fraud, duress, the abuse of economic power, or other unconscionable means;[84] or (2) the courts of the chosen state would be closed to the suit or would not handle it effectively or fairly."[85] Should a plaintiff attempt to argue that the clause is unenforceable due to fraud, the plaintiff must then satisfy rule 9(b) of the Utah Rules of Civil Procedure, which requires "the circumstances constituting fraud . . . [to] be stated with particularity" in the complaint. Under this rule, a plaintiff is required to provide a "sufficiently clear and specific description of the facts underlying the [plaintiff's] claim" of fraud.[86] And under the approach we adopt today, a plaintiff is therefore required to plead with particularity the circumstances leading to the fraudulent inducement of the contract. This rule provides protection against the possibility that plaintiffs could avoid forum selection clauses by artfully pleading around them, as the trial judge can review the complaint to ensure that the details provided by the plaintiff truly constitute fraudulent inducement of the contract.

3. The District Court Has the Discretion to Hold an Evidentiary Hearing on the Issues of Fraud or Overreaching

¶55 In addition to the particularity requirement, should the district court deem it necessary, it has the discretion to hold an evidentiary hearing on the allegations of fraud or overreaching before deciding whether to enforce the challenged forum selection clause. We recognize that there will be cases, like this one, where the entire case may hinge on the enforceability of the contract, and thus,

---

[84] This showing may be made by demonstrating that the entire contract was so obtained. *See supra* ¶¶ 47–53.

[85] *Prows*, 868 P.2d at 812 n.5 (internal quotation marks omitted).

[86] *Hill v. Allred*, 2001 UT 16, ¶ 14, 28 P.3d 1271 (alteration in original) (internal quotation marks omitted); *see also Riley*, 969 F.2d at 960 (holding that "[a] plaintiff seeking to avoid a choice provision on a fraud theory" must plead fraud according to rule 9(b) of the Federal Rules of Civil Procedure).

if ordered, the parties may be forced to litigate much of their case before even exiting the pleading stage of litigation. But this may nevertheless be necessary, since the forum selection clause must be weighed in connection with the court's overall forum non conveniens analysis. Accordingly, the court must determine whether that clause is enforceable, which may require evidence to be gathered regarding the clause, particularly where there are allegations that the clause was improperly obtained.

¶56 Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

## CONCLUSION

¶57 We decline ECL's invitation to adopt a choice-of-law inquiry as a threshold to our forum non conveniens analysis and reverse the court of appeals' decision to uphold dismissal as to Catalyst, Mr. Roberts, and the Director Defendants. We also reverse the court of appeals' decision to uphold dismissal for improper venue as to ARM. On remand, we instruct the district court to first determine whether the forum selection clause is enforceable, and then to perform a forum non conveniens analysis that is consistent with this opinion.

_____